**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, and MOUSTAPHA AKKAD's heirs; SOOHA AKKAD, individually; SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD MONLA, deceased, and RIMA AKKAD MONLA's heirs, ZIAD MONLA, individually, and on behalf of his minor sons; and MICHAEL BUTLER<br><br>                    Plaintiffs,<br><br>          v.<br><br>HSBC HOLDINGS PLC, HSBC NORTH AMERICA HOLDINGS INC., HSBC BANK USA, N.A., HSBC BANK MIDDLE EAST LIMITED AND AL RAJHI BANK f/k/a AL RAJHI BANKING AND INVESTMENT CORPORATION,<br><br>                    Defendants. | Case No.  15-cv-10139 (JRB) |

**MEMORANDUM OF LAW IN SUPPORT OF HSBC DEFENDANTS'**
**MOTION TO STRIKE, DISMISS AND TRANSFER**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 3

ARGUMENT ......................................................................................................... 5

I.     HSBC North America Should Be Stricken from the Complaint ...................... 5

II.    HSBC Holdings and HSBC Middle East are Not Subject to Personal Jurisdiction in This Court ...................................................................................... 8

      A.     General Jurisdiction ................................................................................. 9

      B.     Specific Jurisdiction .............................................................................. 10

            1.     HSBC Holdings ............................................................................. 11

            2.     HSBC Middle East ......................................................................... 14

III.    The Case Should be Transferred to the Southern District of New York under 28 U.S.C § 1404 ................................................................................ 16

      A.     The Private Factors ................................................................................ 18

            1.     Plaintiffs' Choice of Forum ........................................................... 18

            2.     The Situs of Material Events ........................................................... 20

            3.     Access to Proof and Convenience of the Parties and Witnesses ............ 21

      B.     Public Factors ....................................................................................... 22

CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ............................................................9, 15

*Amoco Oil Co. v. Mobil Oil Corp.*,
  90 F. Supp. 2d 958 (N.D. Ill. 2000) ...............................................18, 22

*Andrade v. Chase Home Fin., LLC*,
  2005 WL 3436400 (N.D. Ill. Dec. 12, 2005) ........................................22

*Atkins v. Hasan*,
  2015 WL 3862724 (N.D. Ill. June 22, 2015) ..........................................6

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ..................................................................6

*Braddock v. Jolie*,
  2012 WL 2282219 (N.D. Ill. June 15, 2012) ........................................18

*Brewer Sewing Supplies, Co. v. Fritz Gegauf, Ltd.*,
  1970 WL 491 (N.D. Ill. Apr. 3, 1970) ....................................................7

*Brooks v. McLean Cty. Unit Dist. No. 5*,
  8 N.E.3d 1203 (Ill. App. Ct. 4th Dist. 2014) ........................................19

*Bryant v. ITT Corp.*,
  48 F. Supp. 2d 829 (N.D. Ill. 1999) ......................................................17

*Burris v. Cullinan*,
  2009 WL 3575420 (C.D. Ill. Oct. 23, 2009) .........................................19

*Calder v. Jones*,
  465 U.S. 783 (1983) ...............................................................................14

*Carty v. Beech Aircraft Corp.*,
  679 F.2d 1051 (3d Cir. 1982),
  *superseded on other grounds by statute*, 48 U.S.C. ..............................12

*Catalina Mktg. Int'l, Inc. v. Coolsavings.Com, Inc.*,
  2003 WL 21542491 (N.D. Ill. July 3, 2003) ...........................................8

*Chi., Rock Island, & Pac. R.R. Co. v. Igoe*,
  220 F.2d 299 (7th Cir.1955) ............................................................18, 20

# TABLE OF AUTHORITIES

(Continued)

Page(s)

*Chlebda v. H.E. Fortna & Bro., Inc.*,
609 F.2d 1022, 1023 (1st Cir. 1979) ................................................................. 11, 12

*Craik v. Boeing Co.*,
37 F. Supp. 3d 954 (N.D. Ill. 2013) .................................................................... 17

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ........................................................................................... 9

*Durk v. Daum Trucking, Inc.*,
2008 WL 4671721 (N.D. Ill. Oct. 22, 2008) ...................................................... 6

*FDIC v. Parzygnat*,
2011 WL 3704731 (N.D. Ill. Aug. 23, 2011) ..................................................... 5

*Filus v. LOT Polish Airlines*,
907 F.2d 1328 (2d. Cir. 1990) ............................................................................ 12

*Fiske v. Sandvik Mining & Constr. USA, LLC*,
540 F. Supp. 2d 250 (D. Mass. 2008) ................................................................ 12

*United States ex rel. Heathcote Holdings Corp. v. L'Oreal*
*USA, Inc.*, 2011 WL 3511064 (N.D. Ill. Aug. 9, 2011) ..................................... 21

*Heller Fin., Inc. v. Midwhey Powder Co.*,
883 F.2d 1286 (7th Cir.1989) ............................................................................. 5

*Ill. Tool Works Inc. v. Elektromanufaktur Zangenstein*
*Hanauer GmbH*, 2011 WL 6002967 (E.D. Wis. Nov. 30, 2011) ....................... 15

*Int'l Flavors & Fragrances Inc. v. Van Eeghen Int'l. B.V.*,
2006 WL 1876671 (S.D.N.Y. July 6, 2006) ....................................................... 16

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945) ............................................................................................. 9

*Koos, Inc. v. Performance Indus., Inc.*,
747 F. Supp. 487 (N.D. Ill. 1990) ...................................................................... 20

*Leibovitch v. Islamic Republic of Iran*,
188 F. Supp. 3d 734 (N.D. Ill. 2016) ................................................................. 13, 15

*Leibovitch v. Islamic Republic of Iran*,
852 F.3d 687 (7th Cir. 2017) .............................................................................. 17

## TABLE OF AUTHORITIES
(Continued)

Page(s)

*Martinez v. Deutsche Bank AG*,
 2017 WL 1366048 (S.D. Ill. Apr. 12, 2017)................................................................18, 22

*Meyer v. A & A Logistics, Inc.*,
 2014 WL 3687313 (N.D. Ill. July 24, 2014)....................................................................8

*Moore v. Motor Coach Indus. Inc.*,
 487 F. Supp. 2d 1003 (N.D. Ill. 2007) ...........................................................................17

*Pansophic Sys., Inc. v. Graphic Computer Servs., Inc.*,
 736 F. Supp. 878 (N.D. Ill. 1990) ..................................................................................20

*Primack v. Pearl B. Polto, Inc.*,
 649 F. Supp. 2d 884 (N.D. Ill. 2009) .......................................................................14, 16

*R.J. Corman Derailment Servs. LLC. v. Int'l. Union of*
 *Operating Eng'rs, Local 150*, 335 F.3d 643 (7th Cir. 2003) ..........................................6

*RAR, Inc. v. Turner Diesel, Ltd.*,
 107 F.3d 1272 (7th Cir. 1997) ................................................................................10, 13

*Revenue Realization LLC v. H & R Block, Inc.*,
 2011 WL 1364066 (N.D. Ill. Apr. 11, 2011) ...................................................................7

*Salon Grp., Inc. v. Salberg*,
 156 F. Supp. 2d 872 (N.D. Ill. 2001) ..........................................................................7, 8

*Sanders v. Franklin*,
 25 F. Supp. 2d 855 (N.D. Ill. 1998) ...............................................................................20

*Shulman v. CRS Fin. Servs., Inc.*,
 2003 WL 22400211 (N.D. Ill. Oct. 21, 2003).................................................................10

*Siswanto v. Airbus, S.A.S.*,
 153 F. Supp. 3d 1024 (N.D. Ill. 2015) ...........................................................................10

*Smith v. Jefferson Cty. Bd. of Educ.*,
 378 Fed. App'x 582 (7th Cir. 2010) ...............................................................................13

*Sulak v. Am. Eurocopter Corp.*,
 2009 WL 2849136 (D. Haw. Aug. 26, 2009) ..................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
 Case No. 1:03-md-1570 (S.D.N.Y.) ................................................................................22

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Torrent Pharm. Ltd. v. Daiichi Sankyo, Inc.*,
    196 F. Supp. 3d 871 (N.D. Ill. 2016) ................................................................8, 10

*Virgin Air, Inc. v. Virgin Atl. Airways, Inc.*,
    1992 WL 73522 (N.D. Ill. Mar. 30, 1992).............................................................21

*Weiss v. Nat'l Westminster Bank PLC*,
    453 F. Supp. 2d 609 (E.D.N.Y. 2006) .................................................................14

*Wiley v. Shopko Stores Operating Co.*,
    2011 WL 4547110 (C.D. Ill. Sept. 29, 2011) .......................................................7

**Statutes**

18 U.S.C. § 2331 ....................................................................................................4

18 U.S.C. § 2333 .................................................................................1, 3, 4, 17

18 U.S.C. § 2334 ..................................................................................................17

28 U.S.C. § 1404 ...................................................................................... *passim*

740 ILL. COMP. STAT. 180 ...................................................................................19

**Other Authorities**

Fed. R. Civ. P. 4 .........................................................................................9, 15, 16

Fed. R. Civ. P. 12(b)(2).........................................................................................23

Rule 12(f) .............................................................................................................19

## PRELIMINARY STATEMENT

Plaintiffs bring this action pursuant to the civil provision of the Anti-Terrorism Act against Al Rajhi Bank and four HSBC entities.  Plaintiffs allege that Al Rajhi Bank had links to charities or other organizations that provided support to terrorists like the ones that perpetrated the 2005 hotel bombing in Amman, Jordan that injured Plaintiffs.  The gist of Plaintiffs' claims against the HSBC Defendants, meanwhile, is that these entities provided correspondent banking services to Al Rajhi Bank.[1]

Although Plaintiffs' claims against all four HSBC entities are without merit, threshold considerations of judicial efficiency, jurisdiction and venue counsel this Court first to strike or dismiss the claims against three of these entities, and to transfer what remains of the action to the Southern District of New York.  The reasons for this are straightforward.  As demonstrated in publicly available documents, HSBC North America Holdings Inc. does not provide anything remotely like the banking services described in Plaintiffs' complaint.  This entity is mistakenly named here and the claim against it should be stricken.[2]  Two of the remaining HSBC parties, HSBC Holdings plc and HSBC Bank Middle East Limited, are non-U.S. entities with no operations or employees anywhere in the United States.  They are not alleged to have engaged in any relevant conduct anywhere in the United States and the claims against them must be dismissed for lack of personal jurisdiction.

---

[1]    In the Amended Complaint, Plaintiffs now appear to invoke a theory of conspiracy when describing the HSBC Defendants' provision of banking services to Al Rajhi Bank.  *See* Am. Compl.  ¶ 2 (alleging a "scheme to evade U.S. sanctions.")  Conspiracy liability is available under the Anti Terrorism Act only in narrow circumstances, such as where a defendant conspires directly with a state-designated Foreign Terrorist Organization ("FTO"), like *al Qaeda*, to commit an act of international terrorism.  *See* 18 U.S.C.  § 2333(d)(2).  No such allegation is made here.

[2]    Plaintiffs' original complaint named seven HSBC entities.  *See* ECF No. 1.  The HSBC Defendants filed a motion to strike, dismiss and transfer in December 2016 arguing, in part, that four of the named entities had nothing to do with Plaintiffs' claims.  *See* ECF No. 49.  Thereafter, Plaintiffs amended the complaint dropping claims against three of those entities. ECF. 59.  Claims against four HSBC entities remain.  *Id.*

Finally, this Court is not the appropriate venue to hear Plaintiffs' claim against HSBC Bank USA, N.A.—the only named U.S. entity that actually provides correspondent banking services to non-U.S. financial institutions like Al Rajhi Bank.  *First*, no claim-related conduct is alleged to have occurred in this District.  *Second*, none of the Plaintiffs is from or resides here. *Third*, no relevant witness or evidence is likely to be found here.  Plaintiffs' sole (and manufactured) connection to the Northern District of Illinois is the Illinois residence of the "Special Administrator" of one of the Plaintiffs' estates.  But, even that tenuous connection lacks significance here because "Special Administrators" are empowered only to bring wrongful death actions under the Illinois Wrongful Death Act.  *This* action, however, arises from the federal Anti-Terrorism Act.  In contrast to the dearth of Illinois contacts, this action has strong, meaningful ties to the Southern District of New York.  HSBC Bank USA is headquartered in New York, its correspondent banking business is centered in New York, and relevant witnesses and evidence are located in New York.

The HSBC Defendants filed a motion to strike, dismiss and transfer in response to original complaint.  Plaintiffs amended.  However, nothing in Plaintiffs' new pleading cures (or even addresses) the threshold deficiencies that plagued Plaintiffs' original complaint: (1) HSBC North America Holdings Inc. remains improperly named in this action, (2) personal jurisdiction remains lacking over HSBC Holdings plc, and HSBC Bank Middle East Limited, and (3) the Amended Complaint ("Amended Complaint" or "Am. Compl.") still demonstrates no connection whatever to the Northern District of Illinois.  Plaintiffs' claims against all HSBC entities except for HSBC Bank USA, N.A.  therefore should be either stricken or dismissed, and what remains of the action should be transferred under 28 U.S.C. § 1404(a) to the Southern District of New York.

## BACKGROUND

The amended complaint ("Amended Complaint" or "Am. Compl.") filed by plaintiffs Jeffrey Siegel, Administrator of the Estate of Moustapha Akkad, deceased, and Moustapha Akkad's heirs, Sooha Akkad, Susan Gitelson, Special Administrator of the Estate of Rima Akkad Monla and Rima Akkad Monla's heirs, Ziad Monla, and Michael Butler (collectively, "Plaintiffs") purports to state a claim for violation of the civil provision of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333.  Plaintiffs' ATA claim arises from the November 9, 2005 bombing of a Hyatt hotel in Amman, Jordan allegedly perpetrated by the terror group *al Qaeda in Iraq* ("AQI").  Am. Compl. ¶ 3.  Plaintiffs do not allege that either HSBC Holdings plc ("HSBC Holdings"), HSBC Bank Middle East Limited ("HSBC Middle East"), HSBC North American Holdings Inc. ("HSBC North America"), or HSBC Bank USA, N.A. (together with HSBC Holdings, HSBC Middle East and HSBC North America the "HSBC Defendants") had any involvement in the Jordanian bombing.  Nor do Plaintiffs allege that the HSBC Defendants had any dealings with AQI or AQI's proxies.  In fact, Plaintiffs' precise theory regarding the supposed liability of the different HSBC Defendants is difficult to decipher.  Plaintiffs posit that the HSBC Defendants are liable because "HSBC" provided banking services to co-defendant Al Rajhi Bank f/k/a Al Rajhi Banking and Investment Corporation ("Al Rajhi Bank").  Al Rajhi Bank allegedly maintained accounts for charities linked to various terrorist groups.  These charities allegedly provided support to AQI, and AQI allegedly perpetrated the attack in Jordan. Am. Compl. ¶¶ 100-09.

18 U.S.C. § 2333 establishes civil remedies for violation of the ATA.  It provides:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover

> threefold the damages he or she sustains and the cost of the suit,
> including attorney's fees.

18 U.S.C. § 2333(a).  To prove an "act of international terrorism," a plaintiff must show (1) that the defendant committed one or more of the predicate offenses satisfying the standard in 18 U.S.C. § 2331(1)(A); (2) that the defendant acted with the objective terroristic purpose specified in 18 U.S.C. § 2331(1)(B); and (3) that the plaintiff was injured "by reason of" the defendant's act of international terrorism, which requires a showing that the defendant's terrorist act was a "proximate" cause of the plaintiff's injury.  The Amended Complaint is silent as to the existence of predicate offenses and objective terroristic purpose, and asserts only in conclusory fashion that the conduct of "HSBC" was "a proximate cause of the deaths and personal injuries inflicted on the victims of the November 9, 2005 suicide bombings in Amman, Jordan, and specifically, Plaintiffs and Plaintiffs' Decedents."  Am. Compl. ¶ 114.[3]

Plaintiffs make little effort to differentiate among the various HSBC Defendants named here.  Rather, throughout the Amended Complaint, Plaintiffs loosely employ the term "HSBC" or "HSBC Defendants."  In fact, each of the four HSBC Defendants is a separate, independent entity and each engages in its own distinct business activity:

- HSBC Holdings is the London-based ultimate parent company of the other HSBC Defendants; it has no operations or employees in the United States.  *See* Declaration of Mark Chambers ("Chambers Decl.") ¶¶ 3, 5.

- HSBC Middle East is a bank incorporated and headquartered in Dubai, also with no U.S. operations or employees.  *See* Declaration of Robin Douglas Jones ("Jones Decl.") ¶¶ 3, 5.

- HSBC North America is a U.S. bank holding company whose primary business involves acting as holding company for its operating subsidiaries, not directly serving

---

[3]   While not addressed in the current motion for reasons described below, Plaintiffs' claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), as they fail even to address essential elements of an ATA claim and improperly invokes conspiracy liability.  As explained below, the HSBC Defendants reserve the right to move for dismissal under Rule 12(b)(6) pursuant to the agreement of the parties and the Court's Order.

bank customers.  *See* Declaration of Lynne C. Zaremba regarding HSBC North America ("Zaremba HNAH Decl.") ¶¶ 4-5.

- Finally, HSBC Bank USA is a New York-based national bank offering a full range of commercial and consumer banking products and related financial services, including correspondent banking.  *See* Declaration of Matthew F. Living ("Living Decl.") ¶¶ 3-5.

Plaintiffs make no attempt to explain how their allegations relate to the individualized business conducted by these entities.

Accordingly, by this motion, (1) Defendant HSBC North America moves to strike the claim against it pursuant to Rule 12(f); (2) Defendants HSBC Holdings and HSBC Middle East move to dismiss the claim against them for lack of personal jurisdiction pursuant to Rule 12(b)(2); and (3) Defendant HSBC Bank USA moves to transfer whatever remains of the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Should the HSBC Defendants' motion be denied in any respect, the remaining HSBC Defendants intend to move, pursuant to the parties' agreement and order of the Court, substantively for dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) based on the Amended Complaint's failure to state a claim under the ATA.  *See* ECF Nos. 57, 58, 60.

## ARGUMENT

## I.    HSBC NORTH AMERICA SHOULD BE STRICKEN FROM THE COMPLAINT

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  While courts disfavor Rule 12(f) motions that "potentially serve only to delay," motions like this one that instead "remove unnecessary clutter from the case, [ ] serve to expedite, not delay."  *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989); *see also FDIC v. Parzygnat*, 2011 WL 3704731, at *4 (N.D. Ill. Aug. 23, 2011) ("[W]here such a motion [to strike] would remove unessential clutter and clarify the issues in dispute, they serve to streamline

the litigation.").  "The standard for a motion to strike under Rule 12(f) is the same as that for a motion to dismiss under Rule 12(b)(6) . . . [j]udgment is appropriate only if all of plaintiff's well-pled factual allegations are not sufficient to raise a right to relief above the speculative level." *Durk v.  Daum Trucking, Inc.*, 2008 WL 4671721, at *2 (N.D. Ill. Oct. 22, 2008) (citing *R.J. Corman Derailment Servs. LLC.  v. Int'l. Union of Operating Eng'rs, Local 150*, 335 F.3d 643, 647 (7th Cir.  2003)).

As an initial matter, Plaintiffs make almost no individualized allegations against the HSBC Defendants.  The Amended Complaint repeatedly refers to the HSBC Defendants in the collective, alleging that these entities (presumably including non-U.S.  entities HSBC Holdings and HSBC Middle East) provided "U.S Dollars, wire transfers, foreign exchange, trade financing, and asset management services" to Al Rajhi Bank.  Am.  Compl.  ¶ 93.  Such group pleading is impermissible.  *See Bank of Am., N.A.  v.  Knight*, 725 F.3d 815, 818 (7th Cir.  2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful.   A complaint based on a theory of collective responsibility must be dismissed."); *Atkins v.  Hasan*, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015) (dismissing claims premised on "group pleading" that "provides no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct . . . or whether plaintiffs instead contend that only some of the defendants, or possibly even *none* of them, performed a given act.").

But even if such pleading were permitted, relief under Rule 12(f) would be appropriate as to HSBC North America, because it *does not even offer* correspondent banking services[4] to non-

---

[4]      Correspondent banking generally refers to services provided by a domestic bank for a financial institution located in another country.  A correspondent bank is typically used in different types of cross-border financial transactions, including funds transfers, to facilitate payments.  The types of banking services that "HSBC" is alleged to have provided to Al Rajhi Bank generally fall within the broader category of "correspondent banking."

U.S. clients like Al Rajhi Bank. *See* Zaremba HNAH Decl. ¶ 5. The presence of entities that have nothing whatever to do with the facts and theory of liability set forth in the Amended Complaint constitutes the very "unnecessary clutter" that Rule 12(f) was designed to clear out.[5] *See*, *e.g.*, *Brewer Sewing Supplies, Co. v. Fritz Gegauf, Ltd.*, 1970 WL 491, at *3 (N.D. Ill. Apr. 3, 1970) (dismissing claims against improper defendant under Rule 12(f)).

HSBC North America, a U.S. holding company, has no place in this litigation. The primary business of HSBC North America is to act as a holding company for its subsidiaries, not to provide services to bank customers like Al Rajhi Bank. *See* Zaremba HNAH Decl. ¶ 5; *see also*, *e.g.*, *Revenue Realization LLC v. H & R Block, Inc.*, 2011 WL 1364066, at *1 (N.D. Ill. Apr. 11, 2011) (granting defendant's motion to dismiss for lack of personal jurisdiction on the ground that it was the holding company of a large group of related corporations, with no contact with or business activities in the state of Illinois); *Salon Grp., Inc. v. Salberg*, 156 F. Supp. 2d 872, 877 (N.D. Ill. 2001) (granting defendant holding company's motion to dismiss where its ties with subsidiaries doing business in Illinois were the result of normal business relationships and parent neither did business in Illinois nor took any actions outside of Illinois that might have been expected to have consequences within the State); *Wiley v. Shopko Stores Operating Co.*, 2011 WL 4547110, at *1 (C.D. Ill. Sept. 29, 2011) (granting motions to dismiss because neither defendant had any involvement in the operation of a business and there was no basis to disregard either defendant's corporate status).

The only individualized allegation against HSBC North America is that its "officials, committee members, compliance officers, and Anti-Money Laundering ("AML") directors are

---

[5] As explained below, the HSBC Defendants also move to have Plaintiff Susan Gitelson, the "Special Administrator" of the estate of Rima Akkad Monla, stricken from the Amended Complaint, as she lacks standing to bring this action under the ATA.

involved with, and oversee, the compliance and AML operations at [HSBC Bank USA]." Am. Compl. ¶ 27. But even taken as true, this allegation fails to identify any conduct ascribable to HSBC North America. The fact that executives, officers or directors of HSBC North America are also involved with its indirect subsidiary, HSBC Bank USA, is neither uncommon nor sufficient to impute the conduct of one entity to the other. *See, e.g., Catalina Mktg. Int'l, Inc. v. Coolsavings.Com, Inc.*, 2003 WL 21542491, at *6 (N.D. Ill. July 3, 2003) ("[T]he shared board members and the effect the shared board members had on issues affecting [the subsidiary] are consistent with the normal relationship between a parent company and its subsidiary . . . ."); *Saldberg*, 156 F.Supp.2d at 877 (stating that a parent and subsidiary sharing a director, and subsidiary's officers regularly reporting to parent's managing director, are "ties between a parent and subsidiary [that] are nothing more than the normal incidents of such a relationship").

Simply put, HSBC North America *has nothing to do* with the allegations in the Amended Complaint. Plaintiffs' attempt to "group plead" this entity into relevance must fail.[6] The claim against HSBC North America should be stricken under Federal Rule 12(f).[7]

## II.    HSBC HOLDINGS AND HSBC MIDDLE EAST ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

Plaintiffs bear the burden of making a *prima facie* showing that the Court has personal jurisdiction over the defendants. *Torrent Pharm. Ltd. v. Daiichi Sankyo, Inc.*, 196 F. Supp. 3d 871, 880 (N.D. Ill. 2016) (determining that the court lacked specific personal jurisdiction over

---

[6]    As explained below, HSBC Bank USA moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Southern District of New York, where relevant conduct is alleged to have occurred and where potentially relevant witnesses and evidence are located. Should the Court grant Defendants' transfer application, the Court may defer consideration of the present motion to strike to the transferee court.

[7]    Alternatively, the Court could dismiss claims against HSBC North America pursuant to Rule 12(b)(6). *Meyer v. A & A Logistics, Inc.*, 2014 WL 3687313, at *6 (N.D. Ill. July 24, 2014) (considering motion to strike claim and instead dismissing under Rule 12(b)(6)). However, all HSBC Defendants, including HSBC North America, have reserved the right, pursuant to the agreement of the parties and Order of the Court, to move for dismissal under Rule 12(b)(6) for failure to state a claim at a later time, should this motion be denied.

foreign prescription drug manufacturer and its domestic subsidiary).  Personal jurisdiction comes in two forms: general, where the defendants' contacts with the forum render it "at home" there, and specific, where the plaintiffs' claim arises from the defendants' contacts with the forum. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (holding that a German corporation was not subject to general personal jurisdiction in California).

Typically, a federal court looks to the jurisdictional law of the state in which it sits to determine whether a particular defendant is subject to personal jurisdiction.  But for claims arising under federal law, the "federal long-arm statute" further authorizes personal jurisdiction over a defendant that is not subject to jurisdiction in *any* U.S. state but nonetheless has sufficient contacts with the United States as a whole to satisfy due process.  Fed. R. Civ. P. 4(k)(2); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 656 (7th Cir. 2012) (dismissing plaintiffs' claims against foreign subsidiaries for lack of personal jurisdiction, finding that they lacked sufficient U.S. contacts under Rule 4(k)(2)).  As non-U.S. entities, HSBC Holdings and HSBC Middle East are not subject to personal jurisdiction in any state.  Thus, absent a determination that these entities have constitutionally sufficient "minimum contacts" with the U.S. as a whole, Plaintiffs' claim against HSBC Holdings and HSBC Middle East must be dismissed for want of personal jurisdiction.  *Abelesz*, 692 F.3d at 653-54 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

A.    General Jurisdiction

Neither HSBC Holdings nor HSBC Middle East is subject to general jurisdiction in the United States, and Plaintiffs do not appear to contend otherwise.  Under *Daimler*, general jurisdiction over corporate defendants is virtually always limited to the defendant's place of incorporation and principal place of business. 134 S. Ct. at 749.  HSBC Holdings is a U.K. entity with its principal place of business in London, England.  *See* Chambers Decl. ¶ 3.   HSBC

Middle East is organized and headquartered in Dubai.  *See* Jones Decl. ¶ 3.  General jurisdiction cannot lie here.  *Siswanto v. Airbus, S.A.S.*, 153 F. Supp. 3d 1024, 1030–31 (N.D. Ill. 2015) (finding that a foreign aircraft manufacturer incorporated in France with its principal place of business in Toulouse, France was not subject to general jurisdiction in Illinois).

    B.    <u>Specific Jurisdiction</u>

For specific jurisdiction to attach, Plaintiffs must demonstrate that HSBC Holdings and HSBC Middle East, each individually, has sufficient *claim-related* contacts with the U.S.  to satisfy due process.  *Torrent*, 196 F. Supp. 3d at 879-80.  "[T]he action must *directly arise* out of the specific contacts between the defendant and the forum state."  *RAR, Inc. v. Turner Diesel, Ltd*., 107 F.3d 1272, 1278 (7th Cir. 1997) (affirming dismissal of claims against Scottish corporation for want of jurisdiction) (internal citation omitted).

But Plaintiffs' theory of jurisdiction, like their substantive allegations, does not distinguish between the alleged conduct of the individual Defendants.  Rather, Plaintiffs' theory of jurisdiction is based on Defendants' alleged collective conduct: "Defendants' unlawful conduct was purposefully directed at the United States and the scheme created by the Defendants was specifically designed to effectuate the flow of billions of U.S. dollars through the United States in violation of U.S. laws, and, in fact, resulted in nearly a billion dollars illegally passing through the United States."  Am. Compl. ¶ 10.  And the reason for Plaintiffs' deliberately muddled pleading is clear: only one of the HSBC Defendants—HSBC Bank USA—provides the types of correspondent banking services described in the Amended Complaint.  *See* Living Decl. ¶ 5; Zaremba HNAH Decl. ¶ 5; Jones Decl. ¶ 5; Chambers Decl. ¶ 5.  Plaintiffs' vague references to participation in a U.S.-directed scheme by the collective "Defendants" cannot form the basis for personal jurisdiction over HSBC Holdings and HSBC Middle East in a manner consistent with due process.  *See Shulman v.  CRS Fin.  Servs., Inc.*, 2003 WL 22400211, at *1

10

(N.D. Ill. Oct. 21, 2003) ("The plaintiffs' allegation must affirmatively establish jurisdiction and venue as to each defendant or be dismissed.").

     1.    <u>HSBC Holdings</u>

The Amended Complaint generally alleges that "HSBC Holdings and HSBC Middle East used tactics to circumvent" regulatory filters used to identify and halt transactions involving prohibited persons and countries.  Am. Compl. ¶ 80.  The "tactics" that Plaintiffs describe include "stripping information from wire transfer documentation to conceal the participation of a prohibited country or person, or characterizing a transaction as a transfer between banks in an approved jurisdiction, while omitting payment details that would disclose participation of a prohibited originator or beneficiary."  Am. Compl. ¶ 81.  Plaintiffs further allege that the HSBC Defendants, together, "agreed [presumably, with Al Rajhi Bank] to alter, falsify, or omit information from payment messages that involved prohibited countries and institutions for the express purpose of concealing financial activities and transactions from detection, scrutiny, or monitoring inside the U.S.  by U.S.  regulators, law enforcement, and/or depository institutions."  Am. Compl. ¶ 65.  In the precious few allegations that specifically relate to HSBC Holdings, Plaintiffs allege that the UK parent company became aware of the "tactics" being employed by HSBC affiliates, and yet "did not take decisive action to stop the conduct or inform [HSBC Bank USA] of the extent of the activity."  Am.  Compl. ¶¶ 84, 85.

As an initial matter, allegations that HSBC Holdings *failed to act* in the United States are categorically insufficient to confer jurisdiction.  Indeed, the First Circuit, upon consideration of this precise issue, affirmed the district court's dismissal of the action for lack of personal jurisdiction.  *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1023-24 (1st Cir. 1979).  The plaintiff in *Chlebda* argued that although the defendant itself was *outside* the forum, the

defendant's omission—an alleged failure to warn of a product defect—occurred *inside* the forum. *Id.* at 1023. The First Circuit explained:

> This somewhat metaphysical contention can best be tested by considering whether an omission, viz., a failure to act, may be thought to furnish the minimum contact with that state that is needed to confer jurisdiction. It seems clear that it could not be. The whole thrust of plaintiff's claim is that there was no contact at all.
>
> It is not to be forgotten that jurisdiction is power, and that originally jurisdiction in personam required presence of the person. While power and presence have become largely symbolic, there must still be some form of submission to the state. . . .
>
> Here the very complaint is that defendant did nothing.

*Id*. at 1023-24 (citation omitted). Courts throughout the country have consistently refused to ground jurisdiction on a defendant's alleged omission or failure to act in a forum. *See Filus v. LOT Polish Airlines*, 907 F.2d 1328, 1333 (2d. Cir. 1990) (holding that a failure to warn does not constitute an "act performed in the United States in connection with a commercial activity of the foreign state elsewhere" under the Foreign Sovereign Immunities Act); *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1061 n.10 (3d Cir. 1982) ("[G]rounding jurisdiction solely on [an] allegation of such an omission might remove any limitation upon a state's assertion of personal jurisdiction and . . . be beyond 'traditional notions of fair play and substantial justice.'") (citation omitted), *superseded on other grounds by statute*, 48 U.S.C. § 1612, *as recognized in* United States v. Gillette, 783 F.3d 63 (3d Cir. 2013); *Fiske v. Sandvik Mining & Constr. USA, LLC*, 540 F. Supp. 2d 250, 254 (D. Mass. 2008) ("[A] negligent act or a failure to act outside the state cannot be considered an act or omission *in* [the state].") ; *Sulak v. Am. Eurocopter Corp.*, 2009 WL 2849136, at \*7 (D. Haw. Aug. 26, 2009) ("Although there is not extensive published case law on this subject in this circuit, this Court determines that a passive failure to warn is not the purposeful availment that is required for this Court to exercise personal jurisdiction over

[defendants] under these facts.").   As these cases illustrate, HSBC Holdings cannot be said to have "purposefully directed" its alleged inaction to the United States.

And even if HSBC Holdings' alleged inaction[8] were somehow jurisdictionally relevant, Plaintiffs make no attempt to explain how that inaction "relates," for the purposes of specific jurisdiction, to the 2005 bombing of a hotel in Jordan by AQI.[9]  *See RAR, Inc.*, 107 F.3d at 1278 (to exercise specific jurisdiction, action must "directly arise" from defendant's forum contacts). Indeed, Plaintiffs fail to allege that HSBC Holdings—the London based ultimate parent of HSBC Bank USA—had any role whatsoever in transactions with Al Rajhi Bank. Am. Compl. ¶¶ 77-99 (alleging merely that the  "HSBC Defendants" provided services to Al Rajhi Bank).  As such, there are no allegations in the Amended Complaint that would support the exercise of specific jurisdiction over HSBC Holdings.  *See Leibovitch v.  Islamic Republic of Iran*, 188 F.  Supp. 3d 734, 751 (N.D. Ill. 2016) (finding specific jurisdiction to be lacking where there was virtually no link between the in-state banking activities of French and Japanese banks and plaintiffs' claims arising from a terrorist attack that occurred in Israel with the support of the Iranian government); *see also Smith v. Jefferson Cty. Bd. of Educ.*, 378 Fed. App'x 582, 585-86 (7th Cir. 2010) (affirming dismissal for lack of personal jurisdiction where alleged conduct took place outside of the forum, noting that the plaintiffs' "argument mistakes the nature of personal jurisdiction, which is concerned with the actions of individual defendants and not with the effects of conduct generally).   For Illinois to exercise personal jurisdiction over any one of these nonresident

---

[8]      To the extent Plaintiffs allege that HSBC Holdings was involved in the policy decision to cut ties with and then reinstate a banking relationship with Al Rajhi Bank (*see* Am.  Compl.  ¶ 96), such allegation is also insufficient to establish jurisdiction.  There is no allegation that decision- or policy-making took place in the United States.

[9]      Indeed, Plaintiffs' failure to plead causation renders the Amended Complaint extremely unlikely to survive dismissal under Rule 12(b)(6).

defendants, Smith must allege that the particular person reached out to Illinois in a way that makes him reasonably liable to be sued there.").

Nor can Plaintiffs establish jurisdiction over HSBC Holdings pursuant to the so-called "effects test," which authorizes jurisdiction based on conduct purposefully directed toward the forum that causes foreseeable harm within the forum. *See Calder v. Jones*, 465 U.S. 783, 786-89 (1983). "The effects test only allows a court to exert personal jurisdiction over a defendant if they: (i) commit intentionally tortious actions; (ii) which are expressly aimed at the forum state; (iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered." *Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884, 890 (N.D. Ill. 2009). Plaintiffs' allegations against HSBC Holdings fail to satisfy *any* of these requirements. They do not allege that HSBC Holdings engaged in any intentionally tortious action, much less action expressly aimed at the United States. And the alleged harm flowing from HSBC Holdings' conduct—a 2005 terrorist bombing in Amman, Jordan—is neither foreseeable, nor did it occur in the United States.[10] There is no basis for the exercise of personal jurisdiction over HSBC Holdings, and claims against it must be dismissed.

### 2.    HSBC Middle East

Plaintiffs allege that HSBC Middle East "offers 'HSBC Amanah' services to many of its clients in the Middle East, which is a 'global Islamic financial services division' designed to 'serve the particular needs of Muslim communities' in compliance with Islamic law." Am. Compl. ¶ 28. Plaintiffs also allege that "unlawful funds transfers from HSBC-Middle East were sent through HSBC Holding's [*sic*] U.S. correspondent accounts at" HSBC Bank USA. Am.

---

[10]    The HSBC Defendants note that any allegation in the Amended Complaint that post-dates the November 9, 2005 attack is causally irrelevant and should not be credited. *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 632 (E.D.N.Y. 2006) ("[D]efendant is correct that a transaction which occurred after a terrorist attack cannot be the proximate cause of that attack.").

Compl. ¶ 82.  The latter allegation is untethered to the allegation that the "HSBC Defendants" provided banking services to Al Rajhi Bank.

As with HSBC Holdings, Plaintiffs fail to make individualized allegations against HSBC Middle East sufficient to establish personal jurisdiction.  Notably, the Amended Complaint lacks any allegation that HSBC Middle East provided *any* banking services to Al Rajhi Bank.  Instead, Plaintiffs allege that it was the amorphous "HSBC Defendants" that provided such services.  Am. Compl.  ¶ 93.  Again, this artful drafting is no doubt motivated by the fact that correspondent banking services—*i.e.*, facilitating cross-border transactions like funds transfers for non-U.S. banks—are offered by HSBC Bank USA, not by the other HSBC Defendants.  *See Living Decl.* ¶ 5; Zaremba HNAH Decl.  ¶ 5; Jones Decl.  ¶ 5; Chambers Decl.  ¶ 5.  As such, Plaintiffs fail to establish that their claim relates to, much less "directly arises" from, any conduct by HSBC Middle East.

Moreover, allegations that HSBC Middle East generally provided banking services in Saudi Arabia or elsewhere in the Middle East, even if they were somehow relevant to Plaintiffs' claim, cannot form the basis for specific jurisdiction.  Courts in the Seventh Circuit have routinely held that foreign entities are not subject to personal jurisdiction in the United States when the claim-related conduct occurred abroad.  *See Leibovitch*, 188 F. Supp. 3d at 753 (declining to exercise specific jurisdiction over foreign banks even under nationwide contacts analysis because banking activities occurred almost entirely abroad); s*ee also, e.g., Abelesz*, 692 F.3d at 660 (noting that although Rule 4(k)(2) applies a broader geographic standard for which contacts are relevant, the *minimum* in the "minimum contacts" that are constitutionally sufficient to support specific jurisdiction is the same); *Ill. Tool Works Inc. v. Elektromanufaktur Zangenstein Hanauer GmbH*, 2011 WL 6002967, at *5 (E.D. Wis. Nov. 30, 2011) (dismissing

action under Rule 4(k)(2) where the plaintiff's claim rested on assertion that foreign defendant had knowledge its latching mechanisms would end up in the United States).

As with HSBC Holdings, the "effects test" is no help to Plaintiffs here.   Plaintiffs would have to plead intentionally tortious conduct by HSBC Middle East purposefully directed to the United States that foreseeably causes injury here.  *Primack*, 649 F. Supp. 2d at 890.  None of these elements is supported by the scant allegations against HSBC Middle East set forth in the Amended Complaint.

Because Plaintiffs fail to make jurisdictionally relevant allegations against either HSBC Holdings or HSBC Middle East, the claim against both entities must be dismissed.[11]

## III.   THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK UNDER 28 U.S.C. § 1404

The only HSBC Defendant that could be properly before this Court, even arguably, is HSBC Bank USA.   But Plaintiffs' claim against HSBC Bank USA should not proceed here and, pursuant to § 1404(a), should be transferred to the Southern District of New York where it will most appropriately be resolved.   That is because neither Plaintiffs, nor this Action, have any meaningful connection to this District.   To the extent that any conduct relevant to the claim occurred in the United States, it occurred in New York, where the relevant business division of HSBC Bank USA is centered and where relevant witnesses and evidence are located.   The Seventh Circuit recently faced a case similarly devoid of any Illinois connection:

> We're puzzled that none of the plaintiffs who brought the suit against Iran that resulted in the default judgment are residents of

---

[11]     If the Court grants HSBC Defendants' request to transfer this action to the Southern District of New York, addressed below, it may defer consideration of this motion to dismiss to the transferee court in the interest of judicial efficiency.  *See, e.g., Int'l Flavors & Fragrances Inc. v. Van Eeghen Int'l.  B.V.*, 2006 WL 1876671, at *8 (S.D.N.Y. July 6, 2006) (transferring defendant under § 1406 to the United States District Court for the Eastern District of California, where personal jurisdiction did not lie in New York and expressly reserving the issue of personal jurisdiction in California to the transferee court).  Since the analysis of personal jurisdiction in this case involves nationwide contacts, this Court and those in the Southern District of New York are equally suited to make the determination.

> Illinois.  Why they are suing here rather than in the districts in which they live or work is unexplained.  What is worse than merely unexplained is that they've presented no evidence to suggest that the two Chicago branch banks are either holding Iranian government assets or have any knowledge of where those assets might be held.  In short, what are they doing here?

*Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 690 (7th Cir. 2017) (affirming denial of motion to compel where personal jurisdiction over foreign banks was lacking).  The same question applies to Plaintiffs: what are they doing here?

Section 1404(a) states that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Transfer is warranted upon a showing that (1) venue is proper in the transferee district;[12] (2) the transferee district is more convenient for both the parties and witnesses; and (3) transfer would serve the interest of justice.  *See Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999) (finding transfer to Western District of Kentucky appropriate where Illinois was not plaintiff's home forum and Kentucky was the situs of the majority of material events); *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 964 (N.D. Ill. 2013) (granting transfer where defendant "met its burden of showing that transfer . . . is clearly more convenient for the parties and the witnesses and is in the interest of justice.").  In deciding a motion to transfer, courts consider private and public factors, the weighing of which is within the sound discretion of the district court.  *Moore v. Motor Coach Indus. Inc.*, 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007) (finding transfer to the Southern District of New York appropriate where balance of factors favored transfer).

---

[12]   It is evident that venue is proper in the Southern District of New York.  The venue provision for the ATA provides that "[a]ny civil action under section 2333 . . . against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a).  HSBC Bank USA maintains its principal executive offices in the Southern District of New York.  *See* Living Decl. ¶ 3.

As demonstrated below, these factors overwhelmingly favor transfer in this case.  Judge Herndon of the Southern District of Illinois concluded as much just last month, when he ordered the transfer of a similar ATA action against several HSBC Defendants (and others) to New York, in spite of the plaintiffs' argument that a transfer to the Northern District of Illinois would be more appropriate.  *Martinez v. Deutsche Bank AG*, 2017 WL 1366048, at *4 (S.D. Ill. Apr. 12, 2017).  The same conclusion should be reached here.

> A.     The Private Factors

The Court should consider the following private interest factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses.  *Amoco Oil Co. v.  Mobil Oil Corp.*, 90 F. Supp. 2d 958, 959-62 (N.D. Ill. 2000) (granting transfer where court's consideration of the situs of material events and parties' relative ease of access to source of proof favored transfer to Eastern District of New York).

> 1.     Plaintiffs' Choice of Forum

Plaintiffs' choice of forum should be afforded little weight, because there is no properly cognizable nexus between Plaintiffs or their claims, and the Northern District of Illinois.  Indeed, "the importance of the plaintiff's choice of forum is reduced when the plaintiff does not live in the forum, few relevant events occurred in the forum and other factors weigh[] heavily in favor of transfer."  *Braddock v.  Jolie*, 2012 WL 2282219, at *3 (N.D. Ill. June 15, 2012) (granting transfer under § 1404(a)); *accord Chi., Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.1955) (providing that plaintiff's choice of forum has only "minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff").

Here, not one of Plaintiffs is alleged to be a resident of the Northern District of Illinois.  *See* Am.  Compl.  ¶¶ 11-24.  Plaintiffs Jeffrey Siegel and Sooha Akkad are residents of

California (Am. Compl. ¶¶ 11, 15), and Plaintiff Michael Butler is a resident of Massachusetts (Am. Compl. ¶ 22).   Plaintiffs' single putative "tie" to the District is Illinois resident Susan Gitelson, who purports to assert the instant ATA claims as "Special Administrator" of the Estate of Rima Akkad Monla.  Am. Compl. ¶ 18.  Setting aside that Plaintiffs fail to allege that Ms. Gitelson resides in the *Northern District* of Illinois, Ms. Gitelson clearly does not have standing to bring an ATA claim.  In Illinois, "Special Administrators" are creatures of statute, namely the Illinois Wrongful Death Act, 740 ILL. COMP. STAT. 180/0.01 *et seq.*  They are authorized only to pursue wrongful death actions thereunder.  740 ILL. COMP. STAT. 180/2.1; *see also Burris v. Cullinan*, 2009 WL 3575420, at *5 (C.D. Ill. Oct. 23, 2009) (granting plaintiff leave to amend and seek appointment under proper Illinois Probate Act in order to bring claims outside the scope of the Illinois Wrongful Death Act, but stating that "the Court is required to follow the Wrongful Death Act's plain language that the appointment is effective for purposes of bringing 'the claim'; 'the claim' unequivocally refers to one for wrongful death pursuant to the [Illinois Wrongful Death] Act.").  Illinois courts recognize that "the powers and duties of a special administrator are strictly limited to those prescribed by the wrongful death statute," and accordingly that a special administrator's "authority to prosecute a cause of action '[i]s limited to the wrongful death claim.'"  *Brooks v. McLean Cty. Unit Dist. No. 5*, 8 N.E.3d 1203, 1208 (Ill. App. Ct. 4th Dist. 2014) (affirming dismissal of claims that plaintiff lacked standing to prosecute as special administrator, and noting "appointment of a special administrator under the Wrongful Death Act is for the *sole purpose* of either prosecuting or defending the wrongful death action.") (emphasis added).  The inclusion of Ms. Gitelson in this action appears to be an attempt to manufacture an Illinois connection where none exists.[13]

---

[13]    As such, Susan Gitelson should be stricken from the Amended Complaint under Rule 12(f).

Finally, although Plaintiffs' counsel is located in the Northern District of Illinois, the convenience of counsel is of no consequence to a § 1404(a) analysis.  *Koos, Inc. v. Performance Indus., Inc.*, 747 F. Supp.  487, 490 (N.D. Ill. 1990) (transferring action to Eastern District of Pennsylvania, noting "convenience of counsel is *not* a factor for consideration under Section 1404(a).").  Plaintiffs' forum choice should not control here.[14]

    2.    The Situs of Material Events

"Generally, a plaintiff's choice of forum is given deference unless where, as here, the chosen forum lacks any significant connection to the cause of action."  *Sanders v.  Franklin*, 25 F.  Supp.  2d 855, 858 (N.D.  Ill.  1998) (transferring case to Eastern District of Michigan where at-issue contract was negotiated in Michigan and defendants were Michigan citizens); *Pansophic Sys., Inc. v. Graphic Computer Servs., Inc.*, 736 F. Supp. 878, 881 (N.D. Ill. 1990) (granting transfer under § 1404(a) where "most of the action complained of occurred in Houston" and recognizing that a plaintiff's "preference for an Illinois court has long been accorded 'minimal value where none of the conduct complained of occurred in the forum selected by plaintiff.'") (quoting *Chi. Rock Island R.R. Co.*, 220 F.2d at 304).  Even a cursory review of the Amended Complaint reveals that no events related to this action (material or otherwise) occurred in Illinois.  Indeed, Plaintiffs' claim arises from a November 9, 2005 bombing in Amman, Jordan.  Am. Compl. ¶ 3.  Plaintiffs allege that HSBC Bank USA is liable under the ATA because it "provided Al Rajhi Bank with a wide range of banking services," including "U.S. Dollars, wire transfers, foreign exchange, trade financing, and asset management services," all while allegedly having knowledge of Al Rajhi Bank's purported ties to terror financing.  Am. Compl. ¶¶ 93, 99.

---

[14]    Plaintiffs allege that HSBC Bank USA is located in Mettawa, Illinois (Am.  Compl.  ¶ 26).  However, HSBC Bank USA's correspondent banking business is centered in New York.  Living Decl.  ¶ 5.  Furthermore, HSBC Bank USA does *not* manage any of its correspondent banking relationships from the Northern District of Illinois.  Accordingly, HSBC Bank USA's "tie" to Illinois should carry no weight in the Court's consideration of the present transfer motion.

Even accepting Plaintiffs' allegations as true, to the extent the referenced services were rendered in the United States, such services necessarily would have been offered in New York where HSBC Bank USA's correspondent banking business is centered – *not* in the Northern District of Illinois.  *See* Living Decl.  ¶ 5.

The situs of material events, if there is one in the United States, is thus New York.

### 3.   Access to Proof and Convenience of the Parties and Witnesses

A "court's review of the potential witnesses weighs heavily in favor of transferring [the] action to the Southern District of New York" where, as here, "New York is the headquarters of defendant's U.S. operations, [and] those employees of defendant most familiar with the company's U.S. operations work in New York." *Virgin Air, Inc.  v.  Virgin Atl.  Airways, Inc.*, 1992 WL 73522, at *2 (N.D. Ill. Mar. 30, 1992) (transferring action to Southern District of New York under § 1404(a)).   Furthermore, where the majority of relevant documents and witnesses are located in New York, transfer is favored.  *See United States ex rel. Heathcote Holdings Corp. v. L'Oreal USA, Inc.*, 2011 WL 3511064, at *3 (N.D. Ill. Aug. 9, 2011) (transferring to the Southern District of New York for convenience of witnesses because "the nature of the action places the focus on [defendant's] decisionmaking and deceptive intent, it is far more likely that [defendant's] potential witnesses, located in or near New York, will be more relevant than [plaintiff's].").   Indeed, "[t]he convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Id.*

Here, the convenience of the parties clearly favors the Southern District of New York. HSBC Bank USA's relevant business division is centered in New York, where potentially relevant witnesses and documents are likely located.  *See* Living Decl. ¶¶ 5, 6.  Apparently, neither Plaintiffs' witnesses nor evidence are located in the Northern District of Illinois.  Nor do

any of Plaintiffs reside here, with the exception of Susan Gitelson who lacks standing to bring this action.[15]

Since Plaintiffs have no ties to the Northern District of Illinois, and virtually all relevant documents and witnesses are most likely in the Southern District of New York, the convenience factor favors transfer.

> B.    Public Factors

The public interest factors include: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the relation of the community to the occurrence at issue; and (4) the desirability of resolving controversies in their locale.  *Amoco Oil*, 90 F. Supp. 2d at 961-62.

"Common sense suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such witnesses are within the court's subpoena power." *Andrade v.  Chase Home Fin., LLC*, 2005 WL 3436400, at *9 (N.D. Ill. Dec. 12, 2005) (granting transfer where "the interests of justice favor transfer because this case is likely to proceed more quickly in the transferee forum.").  Since HSBC Bank USA is headquartered in New York, its relevant business is centered in New York, and relevant witnesses and evidence are most likely in New York, trying this case in New York promotes speed and judicial efficiency.  *See* Living Decl. ¶¶ 5, 6.

Moreover, transferring this action to the Southern District of New York will achieve efficiencies because Al Rajhi Bank is currently engaged in a consolidated, multi-district litigation there involving similar  allegations at issue here: that banks provided financial services to individuals and entities associated with *al Qaeda*.  *See In re Terrorist Attacks on Sept. 11, 2001*, Case No. 1:03-md-1570 (S.D.N.Y.).  As Judge Herndon concluded in *Martinez*, the

---

[15]        As noted, Plaintiffs are residents of California and Massachusetts.  Am. Compl.  ¶¶ 11, 15, 22.

existence of a similar action in New York weighs strongly in favor of transfer.  2017 WL 1366048 at *5 ("Most importantly, this case is very similar to the *Freeman* case that is pending in the Eastern District of New York.").

The remaining public factors are either neutral or favor transfer to New York.  The Court's familiarity with the law is inapplicable; this action is brought under federal law in which both this Court and the Southern District of New York are steeped.  As discussed above, no relevant conduct occurred in Illinois and no victims are alleged to reside in this District.  To the extent that relevant conduct occurred in the United States (*i.e.*, though not properly alleged, the provision of global banking services to Al Rajhi Bank), such conduct occurred in New York.  Therefore, the Southern District of New York has a stronger local interest in adjudicating this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an Order: (1) striking from the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) Plaintiffs' claim against HSBC North America Holdings Inc.; (2) dismissing Plaintiffs' claim against HSBC Holdings plc and HSBC Bank Middle East Limited pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) transferring what remains of the action under 28 U.S.C.  § 1404(a) to the Southern District of New York.

Respectfully Submitted,

Dated: May 19, 2017

MAYER BROWN LLP

/s/ *Justin A.  McCarty*

Justin A.  McCarty
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
JMcCarty@mayerbrown.com

Mark G.  Hanchet
Robert W.  Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
MHanchet@mayerbrown.com
RHamburg@mayerbrown.com

Marc R.  Cohen
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
MCohen@mayerbrown.com

*Counsel for Defendants HSBC Holdings plc, HSBC*
*North America Holdings Inc., HSBC Bank USA,*
*N.A.  and HSBC Bank Middle East Limited*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on May 19, 2017, he caused a copy of this

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE,

DISMISS AND TRANSFER PLAINTIFFS' AMENDED COMPLAINT to be filed via the ECF

system for receipt by the attorneys that have appeared for the parties.

/s/ *Justin A. McCarty*
Justin A. McCarty