UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY SIEGEL, et al.

                    Plaintiffs,

          v.

HSBC BANK USA N.A. and HSBC NORTH
AMERICA HOLDINGS INC.,

                    Defendants.

Case No.  17-cv-6593 (DLC)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

MAYER BROWN LLP

Mark G.  Hanchet
Robert W.  Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500

*Counsel for HSBC North America Holdings
Inc. and HSBC Bank USA N.A.*

April 6, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.     ANTI-TERRORISM ACT ......................................................................................... 2

II.    PLAINTIFFS' ALLEGATIONS ............................................................................... 3

III.   PROCEDURAL HISTORY ....................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.     FEDERAL RULE 12(B)(6) STANDARD ............................................................... 6

II.    PLAINTIFFS FAIL PLAUSIBLY TO ALLEGE THAT DEFENDANTS ARE
       PRIMARILY LIABLE UNDER THE ATA .............................................................. 7

      A.    Plaintiffs Fail Plausibly to Allege Proximate Cause ............................................. 7

      B.    Plaintiffs Fail Plausibly to Allege that Defendants Committed An Act of
           International Terrorism ....................................................................................... 11

             1.    Plaintiffs Fail Plausibly to Allege that Defendants Acted with
                   Objective Terroristic Intent ......................................................................... 12

             2.    Plaintiffs Fail Plausibly to Allege that Defendants Engaged in Acts
                   Dangerous to Human Life ........................................................................... 13

      C.    Plaintiffs Fail Plausibly to Plead the Elements of Sections 2339A and
           2339B ............................................................................................................... 13

III.   PLAINTIFFS FAIL PLAUSIBLY TO ALLEGE THAT DEFENDANTS ARE
       SECONDARILY LIABLE UNDER THE ATA ....................................................... 16

      A.    Plaintiffs Fail Plausibly To Allege that Defendants Provided Any
           Assistance To the Person Who Committed an Act of International
           Terrorism ........................................................................................................... 16

      B.    Plaintiffs Fail Plausibly To Allege the Elements of Aiding-and-Abetting
           and "Substantial Assistance" ............................................................................. 17

CONCLUSION ................................................................................................................. 19

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................................6, 7, 16, 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................................6, 18

*Fields v. Twitter Inc.,*
   881 F.3d 739 (9th Cir. 2018) ..................................................................................7, 9

*Halberstam v. Welch,*
   705 F.2d 472 (D.C. Cir. 1983) ...............................................................17, 18, 19

*Hussein v. Dahabshiil Transfer Servs. Ltd.,*
   230 F. Supp. 3d 167 (S.D.N.Y. 2017)...................................................................15

*Khulumani v. Barclays Nat'l Bank Ltd.,*
   504 F.3d 254 (2d Cir. 2007), *aff'd sub nom. Am. Isuzu Motors, Inc. v.
   Ntsebeza,* 553 U.S. 1028 (2008) ..........................................................................18

*Licci v. Lebanese Canadian Bank,*
   20 N.Y.3d 327 (2012) ...............................................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
   732 F.3d 161 (2d Cir. 2013) ....................................................................................10

*Linde v. Arab Bank, PLC,*
   882 F.3d 314 (2d Cir. 2018).......................................................................... *passim*

*Mastafa v. Australian Wheat Bd. Ltd.,*
   2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008).......................................................18

*Mastafa v. Chevron Corp.,*
   770 F.3d 170 (2d Cir. 2014).....................................................................................7

*Ofisi v. BNP Paribas S.A.,*
   278 F. supp. 3d 84 (D.D.C. 2017) *order vacated in part on other grounds and
   reconsideration denied,* 285 F. Supp. 3d 240 (D.D.C. 2018) .......................... *passim*

*Owens v. BNP Paribas S.A.,*
   235 F. Supp. 3d 85 (D.D.C. 2017) ..............................................................9, 14, 15

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.,*
   712 F.3d 705 (2d Cir. 2013)......................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)............................................................................... *passim*

*Shaffer v. Deutsche Bank AG*,
   No. 16-cv-0497 (S.D. Ill. Dec. 12, 2017), ECF 69 ...................................................9

*Stansell v. BGP, Inc.*,
   2011 WL 1296881 (M.D. Fla. Mar. 31, 2011) .......................................................12

*Stutts v. De Dietrich Grp.*,
   2006 WL 1867060 (E.D.N.Y. June 30, 2006) .........................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 118 (2d Cir. 2013).............................................................................. *passim*

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014)..................................................................................12

**Statutes, Rules and Regulations**

18 U.S.C. § 2331.............................................................................................2, 11, 12, 13

18 U.S.C. § 2333.............................................................................................2, 3, 11, 16

18 U.S.C. § 2339.............................................................................................13, 14, 15

Bank Secrecy Act of 1970 ...............................................................................................4

Federal Rule of Civil Procedure 12(b)(6) ........................................................5, 6, 8, 9

## PRELIMINARY STATEMENT

This action arises from the 2005 bombing of a hotel in Amman, Jordan, allegedly perpetrated by the terrorist organization al-Qaeda in Iraq ("AQI").  Plaintiffs, four U.S. nationals injured or killed in the attack, bring claims pursuant to the Anti-Terrorism Act ("ATA") against U.S. bank HSBC Bank USA N.A. ("HSBC-US") and its corporate parent, a U.S. holding company called HSBC North America Holdings Inc. ("HSBC North America") (together, "Defendants").

Plaintiffs do not allege that Defendants themselves had anything to do with the bombing. Rather, Plaintiffs advance the following attenuated theory of liability: (1) HSBC-US provided correspondent banking services to a prominent Saudi bank, Al Rajhi Bank ("ARB"), (2) those correspondent banking services allowed ARB to execute U.S. dollar transactions for its customers, (3) ARB had customers with ties to terrorist groups, including to AQI, (4) HSBC-US continued to provide banking services to ARB, despite alleged knowledge of ARB's customers' ties to terrorist groups, (5) by virtue of HSBC-US's service, ARB's customers gained access to the U.S. financial market, and (6) this access allowed AQI to fund its terrorist activities, including the 2005 hotel bombing. On the basis of these allegations, Plaintiffs contend that HSBC-US and HSBC North America are liable under the civil provision of the ATA.

This action must be dismissed.  Plaintiffs fail to allege any legally significant or proximate relationship between the Defendants and AQI or to the Jordanian bombing. Plaintiffs' claim against ARB already *has* been dismissed—with prejudice—because Plaintiffs failed to allege even a sufficient connection between ARB and AQI or to the attack that could sustain specific personal jurisdiction over ARB.  So Defendants, which are alleged only to have provided correspondent banking services to now-dismissed ARB and are even more remote from

this bombing, cannot be said to have (1) committed an act of international terrorism,

(2) proximately caused the attack, (3) acted with *scienter*, or (4) knowingly and substantially

assisted AQI in perpetrating the attack.  The claim against Defendants should be dismissed with

prejudice.

## BACKGROUND

## I.    ANTI-TERRORISM ACT

The ATA creates a civil cause of action for U.S. nationals injured "by reason of an act of

international terrorism." 18 U.S.C. § 2333(a).  The ATA defines "international terrorism" to

include activities that:

> (A)    involve violent acts or acts dangerous to human life that are
> a violation of the criminal laws of the United States or of
> any State, or that would be a criminal violation if
> committed within the jurisdiction of the United States or of
> any State,
>
> (B)    appear to be intended—(i) to intimidate or coerce a civilian
> population; (ii) to influence the policy of a government by
> intimidation or coercion; or (iii) to affect the conduct of a
> government by mass destruction, assassination, or
> kidnapping; and
>
> (C)    occur primarily outside the territorial jurisdiction of the
> United States.

18 U.S.C. § 2331.  Thus, a plaintiff must allege several basic elements to state a viable claim for

direct liability under § 2333(a).  *First*, the plaintiff must plausibly allege that *the defendant itself*

committed an act of "international terrorism"; *i.e.*, conduct that satisfies each element of

§ 2331(1).  *See Linde v. Arab Bank, PLC*,  882 F.3d 314, 331 (2d Cir. 2018); *Rothstein v. UBS*

*AG*, 708 F.3d 82,  97 (2d Cir. 2013).  *Second*, the plaintiff must plausibly allege that he or she

was injured "by reason of" the defendant's act of international terrorism, which the Second

Circuit has construed to require plausible allegations that the defendant's act directly and

substantially caused the plaintiff's injury.  *See Rothstein*, 708 F.3d at 95; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118,  123-24 (2d Cir. 2013) ("*Al Rajhi*").

In 2016, Congress enacted JASTA, which amended the ATA to provide a new, narrow civil cause of action for secondary liability against "any person who aids and abets, by knowingly providing substantial assistance [to], or who conspires with the person who committed such an act of international terrorism." *See* § 2333(d)(2).  JASTA's secondary liability provision has two significant limitations.  *First*, it applies only to injuries caused by a terrorist act that is "committed, planned or authorized" by an officially designated Foreign Terrorist Organization ("FTO").  § 2333(d)(2).  *Second*, JASTA liability applies only to "knowing" substantial assistance to, or conspiracy with, the terrorist itself.  *Linde*, 882 F.3d at 320.  "[A]iding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*.  Aiding and abetting requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities."  *Id.* at 329 (citation omitted).  There is no secondary liability under § 2333(a) for claims to which JASTA does not apply.  *See id.* at 320; *Al Rajhi*, 714 F.3d at 123.

## II.    PLAINTIFFS' ALLEGATIONS

We briefly summarize the allegations in the TAC.  Plaintiffs are victims of a November 9, 2005 suicide bombing at the Grand Hyatt, in Amman, Jordan perpetrated by the terrorist group, AQI. TAC ¶ 4.  At the time of the attack, AQI had been officially designated by the United States as an FTO. TAC ¶ 2.  Plaintiffs allege that individuals somehow associated with AQI obtained banking services from ARB. TAC ¶ 34.

Plaintiffs further contend that HSBC Bank USA, a U.S. bank headquartered in Manhattan, provided correspondent, or bank-to-bank services[1] to ARB, such as U.S. dollar clearing.  TAC  ¶ 38.[2]  They maintain that Defendants were aware that bank clients of ARB were associated with terrorist financing, TAC ¶ 36, and in January 2005 (10 months before the hotel bombing), decided to end their "longstanding relationship with [ARB]."  TAC  ¶ 111.  Plaintiffs contend that the correspondent banking services HSBC-US offered to ARB permitted AQI to gain access to the U.S. financial system, thereby providing it with the financial wherewithal to carry out terrorist acts, including the November 9, 2005 Amman bombing that injured Plaintiffs. TAC ¶ 39.

In addition to providing banking services to ARB, Plaintiffs assert that "HSBC" (Plaintiffs do not define that term in the TAC) entered into some kind of "scheme" (Plaintiffs do not specify the participants in this "scheme") to violate various U.S. banking regulations, including but not limited to economic sanctions implemented by U.S. Treasury Department's Office of Foreign Assets Control (OFAC) and provisions of the Bank Secrecy Act of 1970 ("BSA"), despite knowing that ARB and its owners purportedly serviced "clients linked with terrorism."  TAC ¶ 36.[3]  Plaintiffs also allege that Defendants knew of ARB's purported "terrorist ties," quoting from (i) a 2012 Senate Report, *U.S. Vulnerabilities to Money*

---

[1] Correspondent banking generally refers to services provided by a U.S. domestic bank (here, HSBC-US) for a financial institution located in another country (in this case, ARB). Non-U.S. banks typically use correspondent banks for different types of cross-border financial transactions, including international wire transfers.

[2] To the extent that Plaintiffs make allegations regarding the circumvention of regulatory sanctions or "stripping" by Defendants (*see, e.g.,* TAC ¶¶ 2, 84, 87, 89), such allegations have nothing to do with ARB or this action, do not find any factual grounding in the public materials on which Plaintiffs rely, and do not make sense in relation to Defendants—a U.S. bank and its U.S. bank-holding company parent. Stripping occurs when a non-U.S. financial institution omits or removes information from wire transfer documentation to conceal the participation of a prohibited person or country, so the transaction is not picked up by compliance filters when it is processed by the U.S. correspondent bank. *Id.* Thus any stripping activity or sanctions circumvention necessarily occurs before a transaction reaches the U.S. correspondent bank.

[3] While Plaintiffs allege AML and compliance problems at HSBC-US and its affiliates, in reliance on the Senate Report, such regulatory shortfalls do not translate to acts of international terrorism that caused the bombing at issue here, or knowing, substantial assistance to AQI.  *See Rothstein*, 708 F.3d at 96; *Linde*, F.3d at 320.

*Laundering, Drugs, and Terrorist Financing:  HSBC Case History*, a subsection of which

highlighted HSBC's correspondent banking relationship with ARB (the "Senate Report") (TAC

¶ 63) and (ii) a 2003 Report from the U.S. Central Intelligence Agency which concluded that

members of the Al Rajhi family had supported Islamic extremists, and "probably knew" that

terrorists use ARB.  TAC ¶ 103.[4]

On the basis of these allegations, Plaintiffs assert that Defendants are civilly liable under

the ATA for the injuries they sustained from the Amman bombing.

## III.   PROCEDURAL HISTORY

Plaintiffs commenced this action on November 6, 2015 in the Northern District of Illinois

ECF 1.  Initially, they named seven HSBC entities[5] and ARB as defendants.  Shortly thereafter,

Plaintiffs amended the complaint and voluntarily dismissed claims against several HSBC

entities. ECF 59.  ARB and the remaining non-U.S. HSBC Defendants then moved to dismiss for

lack of personal jurisdiction, and all HSBC Defendants moved to transfer the remainder of the

action to the Southern District of New York, deferring adjudication of the merits until such time

as the proper parties and venue was established.[6]  ECF 65, 67.

On August 14, 2017, Judge Blakey issued a Memorandum Opinion and Order dismissing

claims against ARB, HSBC Holdings and HSBC Middle East for lack of personal jurisdiction

and transferring the action to this Court.  ECF 79 at 11, 19.  Specifically, Judge Blakey

concluded that "[n]one of these [defendants] had sufficient minimum contacts with the United

States as a whole to justify the exercise of this Court's jurisdiction" and, even if they had alleged

---

[4] The Complaint contains various references to regulatory provisions and industry best practices.  *See*, *e.g.*, TAC ¶¶
52–59.  But these references relate to private banking wealth management activities and have no relevance to the
correspondent banking relationship upon which Plaintiffs' allegations are based.
[5] Those entities included HSBC Holdings, plc, HSBC North America Holdings, HSBC Bank USA, HSBC Securities
(USA), Inc., HSBC Finance Corporation, HSBC USA Inc., and HSBC Bank Middle East Limited.
[6] Defendants expressly reserved the right to later move for dismissal under Federal Rule of Civil Procedure 12(b)(6).

such contacts, Plaintiffs had "not connected these Defendants to the November 2005 attack that is the crux of this lawsuit." ECF 79 at 9, 11.

On September 13, 2017, Plaintiffs sought leave of this Court to file a Second Amended Complaint ("SAC"), in order to resurrect their claims against ARB and HSBC Holdings.[7] ECF 84. On January 19, 2018, this Court denied Plaintiffs' application as futile and dismissed with prejudice all claims against ARB and HSBC Holdings. ECF 98. The Court observed:

> The SAC alleges that Al Rajhi Bank aided terrorists by giving them an entry into the American financial system in a way which circumvented usual regulations, but does not sufficiently assert how this banking relationship relates to the November 9, 2005 attacks in Amman. Allegations that a bank provides financial services to clients that associate with al Qaeda, thereby aiding al-Qaeda, are "not enough for personal jurisdiction purposes." *In re Terrorist Attacks*, 714 F.3d at 676. The plaintiffs have failed to connect Al Rajhi Bank to the November 9, 2005 attacks which, as Judge Blakey noted, "is the crux of this lawsuit."

ECF 98 at 12. After being given a final opportunity to amend their complaint as to the two remaining Defendants, HSBC-US and HSBC North America Holdings, Plaintiffs filed their Third Amended Complaint ("TAC") on March 16, 2018 (ECF 103). Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

## I.     FEDERAL RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[7] Plaintiffs did not attempt to revive claims against HSBC Bank Middle East Limited. *See* ECF 84-1.

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

In making the plausibility determination, a court may consider only well-pleaded factual allegations. *See Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). A court must ignore "legal conclusions[] and threadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Id.* (citation omitted). "[L]abels and conclusions," "or a formulaic recitation[s] of the elements of a cause of action" and "'naked assertion[s]' devoid of 'further factual enhancement'" all must be disregarded. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (citations omitted).

## II. PLAINTIFFS FAIL PLAUSIBLY TO ALLEGE THAT DEFENDANTS ARE PRIMARILY LIABLE UNDER THE ATA

To the extent that Plaintiffs' claim is based on a theory of primary liability, it fails for at least three reasons. Plaintiffs fail plausibly to allege: (1) that Defendants proximately caused the bombing in Amman, Jordan; (2) that Defendants themselves committed an act of international terrorism; or (3) that Defendants acted with requisite *scienter*.

### A. Plaintiffs Fail Plausibly to Allege Proximate Cause

Second Circuit precedent requires an ATA plaintiff to plausibly allege proximate cause—that the defendant's alleged violation led directly and substantially to the plaintiff's injuries. *Rothstein*, 708 F.3d at 95-97; *see also Fields v. Twitter Inc.*, 881 F.3d 739 (9th Cir. 2018) (applying *Rothstein*). Indirect theories of causation will not do.

In *Rothstein*, plaintiffs were victims of rocket attacks conducted by Hamas or Hizbollah and brought an ATA claim against UBS, alleging that UBS "facilitated" those attacks by directly "furnishing United States currency to Iran." *Rothstein*, 708 F.3d at 84-85. Specifically, the

7

*Rothstein* plaintiffs alleged that UBS circumvented U.S. sanctions "by illegally providing Iran with hundreds of millions of dollars in cash . . . kn[owing] full well that the cash dollars it was providing . . . would be used to cause and facilitate terrorist attacks by Iranian-sponsored terrorist organization such as Hamas [and] Hizbollah" and that "the ability of Hizbollah and Hamas to . . . carry out those attacks was substantially increased by those organizations' receipt of cash dollars from Iran." *Id.* at 87, 97.  In affirming dismissal of these claims, the Second Circuit held that the plaintiffs had failed to allege that UBS's actions were the proximate cause of plaintiffs' injuries. *Id.* at 95.

In so holding, *Rothstein* rejected the notion that a bank's violation of U.S. regulations by engaging in financial transactions with Iran, a state sponsor of terrorism, is sufficient basis to hold a bank "liable for injuries subsequently caused by a terrorist organization associated with that state." 708 F.3d at 96.[8]  It also deemed insufficient the plaintiffs' indirect causal allegations regarding UBS's alleged financial transactions with Iran.  The Second Circuit reasoned that while "[t]he fact that the transfers were made to a state sponsor of terrorism of course made it more likely that the moneys would be used for terrorism than if the transfers were to a state that did not sponsor terrorism," such allegations were insufficient to "meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs." *Id.* at 97.

Following *Rothstein*, courts in this Circuit and beyond have consistently rejected indirect theories of causation like that advanced here.  *See, e.g., Al Rajhi*, 714 F.3d at 124 (affirming dismissal for lack of proximate cause where "plaintiffs do not allege that the Rule 12(b)(6)

---

[8] The court ruled that "plaintiffs' contention that proximate cause is established because they were injured after [defendant] violated federal law is a *post hoc*, *ergo propter hoc* proposition that would mean that any provider of U.S. currency to a state sponsor of terrorism would be strictly liable [under the ATA]." *Id.*

defendants participated in the September 11, 2001 or that they provided money directly to al-Qaeda; nor are there factual allegations that the money allegedly donated by the Rule 12(b)(6) defendants to the purported charities actually was transferred to al-Qaeda and aided in the September 11, 2001 attacks.");  *Fields*, 881 F.3d at 749-50 (applying *Rothstein* to affirm dismissal of claims against Twitter where plaintiffs had not plausibly pled the required connection between Twitter's alleged conduct and the plaintiffs' injuries at the hands of ISIS); Mem. & Order, *Shaffer v. Deutsche Bank AG*, No. 16-cv-0497 (S.D. Ill. Dec. 12, 2017), ECF 69 (dismissing claims against Deutsche Bank for lack of proximate cause based on allegations of banking services to Iranian parties in contravention of U.S. sanctions regime); *Ofisi v. BNP Paribas S.A.*, 278 F. supp. 3d 84 (D.D.C. 2017) (dismissing claims against BNP Paribas for allegedly providing U.S.-dollar clearing to sanctioned Sudanese entities that materially assisted al-Qaeda and Hizbollah) *order vacated in part on other grounds and reconsideration denied*, 285 F. Supp. 3d 240 (D.D.C. 2018); *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85 (D.D.C. 2017) (same).

A straightforward application of *Rothstein* and its progeny compels dismissal here. Defendants are not alleged to have provided any banking services to AQI or to its operatives. Rather, Plaintiffs contend that HSBC-US provided correspondent services to ARB.  TAC ¶ 38. Plaintiffs then allege (in altogether conclusory fashion) that some unspecified banking customers of ARB had connections to AQI, and that somehow these customers provided financial assistance that aided AQI in perpetrating terror attacks including possibly the 2005 hotel bombing.  *See, e.g.*, TAC ¶ 39 (noting ARB's unspecified "connections to terrorist organizations"); *see also* TAC § 113 ("HSBC chose to provide Al Rajhi Bank with banking services and therefore knowingly and substantially assisted *terrorist organizations* [to] acquire

the U.S. dollars required to carry out their acts of terror") (emphasis added).  Indirect theories of

causation such as this—and indeed, theories much less attenuated than this—are plainly

insufficient to survive dismissal.  *See  Al Rajhi*, 714 F.3d at 124 ("Simply put, plaintiffs do not

allege that the [Defendants] participated in [the] attacks or that they provided money directly to

al-Qaeda.").[9]

   Dismissal is particularly appropriate here, given that ARB—the entity that Plaintiffs

allege stood between Defendants and AQI—has itself been dismissed from this case for lack of

jurisdiction because plaintiffs fail to allege any relationship between ARB and the bombing that

harmed them. ECF 79 at 11.  As this Court held, even assuming ARB had sufficient contacts

with the United States, "[t]he SAC alleges that Al Rajhi Bank aided terrorists by giving them an

entry into the American financial system in a way which circumvented usual regulations, *but

does not sufficiently assert how this banking relationship relates to the November 9, 2005 attacks

in Amman* . . . which, as Judge Blakey noted, 'is the crux of this lawsuit.'"  ECF 98 at 12.

   Because Plaintiffs' allegations of a banking relationship between ARB and AQI were

insufficiently related to the Amman bombing to sustain specific personal jurisdiction, their

allegations of an even more remote relationship between Defendants and the bombing surely

cannot satisfy the more exacting proximate cause standard.  *See Licci v. Lebanese Canadian

Bank*, 20 N.Y.3d 327, 339 (2012) (holding that whether a claim "arises from" forum contracts

for the purpose of specific jurisdiction is "relatively permissive" and does not require a showing

of proximate cause, but merely "a relatedness between the transaction and the legal claim such

that the latter is not completely unmoored from the former"); *see also Licci ex rel. Licci v.

Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (noting that the New York

_____

[9] Accordingly, Plaintiffs' reliance on the Senate Report in an attempt to equate regulatory or compliance
shortcomings—unrelated to AQI or the bombing at issue here—with ATA liability is misplaced.

Court of Appeals made clear that "arises from" prong of specific jurisdiction requires less than a direct causal link).

Plaintiffs' causal theory is even further undermined by a temporal disconnect. As this Court observed in denying Plaintiffs leave to re-plead claims against ARB, "[t]aken together, the SAC and the [Senate] Report actually allege that while Al Rajhi Bank may have done business inside the United States with HSBC USA before the attacks, it was not doing so from late January 2005 through the date of the attacks." [10]  ECF 98 at 11-12.  Thus, even if Plaintiffs could establish that the provision of banking services to ARB somehow was sufficiently proximate to satisfy *Rothstein* (they cannot), by their own allegations, HSBC US was not providing banking services to ARB for the approximately 10 months leading up to the attack.[11]

B.    Plaintiffs Fail Plausibly to Allege that Defendants Committed An Act of International Terrorism

As the Second Circuit recently confirmed in *Linde*, to state a claim under § 2333(a), a plaintiff must plausibly allege that the defendant itself committed an act of "international terrorism" as defined in § 2331(1).  *Linde*,882 F.3d at 331.  An act of international terrorism under the ATA must: (A) "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; (B) "appear to be intended . . . to intimidate or coerce a civilian population . . . to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping"; *and* (C) "occur primarily outside the territorial

---

[10] Allegations relating to causation in Plaintiffs' proposed Second Amended Complaint, as referenced in the Court's opinion, are substantively identical to those in the TAC.
[11] Allegations against HSBC North America are even more remote. Plaintiff contend that HSBC North America's "officials, committee members, compliance officers and Anti-Money Laundering ('AML') directors are involved with, and oversee, the compliance and AML operations at HBUS" (TAC ¶ 27).  This entity is not alleged to have provided banking services to anyone.

jurisdiction of the United States, or transcend boundaries."  18 U.S.C. § 2331(1); *Linde*, 882 F.3d at 331-32.[12]

 *Linde* compels dismissal because Plaintiffs fail to allege that Defendants' conduct evinced objective terroristic intent or constituted "acts dangerous to human life" as required to plead an act of international terrorism under the ATA.

1. Plaintiffs Fail Plausibly to Allege that Defendants Acted with Objective Terroristic Intent

 *Linde* confirmed that to establish primary liability, an ATA plaintiff must allege, and later prove, that each defendant manifested the apparent intent "to intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping," as required by § 2331(1)(B).  *Id.* *9.[13]  Plaintiffs do not, and cannot, plausibly allege that a reasonable observer would perceive the alleged conduct of Defendants—the provision of correspondent banking services to a Saudi commercial bank—as *intended* to achieve a terroristic purpose.  *See, e.g., Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011) (finding payment of protection money to Colombian terrorists to allow defendants to conduct oil exploration "would not lead an objective observer to conclude Defendants intended to achieve any one of the results listed in § 2331(1)(B)");  *Stutts v. De Dietrich Grp.*, 2006 WL 1867060, at *2 (E.D.N.Y. June 30, 2006) (finding that "engaging in commercial banking activity" with suppliers of chemicals to Iraq was not "designed to coerce civilians or government entities as required under § 2331").

---

[12] In *Linde*, victims of attacks perpetrated by Hamas in Israel in 2002 and 2003 asserted ATA claims against Arab Bank, alleging that it provided financial services to known leaders and operative of Hamas, along with associated entities and charities.  *Linde*, 882 F.3d at 319.  The Second Circuit held that even if Arab Bank's conduct constituted a violation of the criminal "material support" statute, such a violation alone is insufficient to establish that it committed an "act of international terrorism" under the ATA, which requires a separate showing that the defendant manifested an objective terroristic intent and engaged in conduct dangerous to human life. *Id*. at 326.

[13] As the Second Circuit observed in *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014), this element must be assessed under an objective standard and "does not depend on the actor's beliefs."

12

Plaintiffs themselves confirm this commonsense conclusion: they allege that the Defendants were motivated by business interests, not terrorist intent.  *See* TAC ¶ 114.

> 2.  Plaintiffs Fail Plausibly to Allege that Defendants Engaged in Acts Dangerous to Human Life

*Linde* also made clear that § 2333(1)(A) itself contains two distinct elements: the defendant's activity must both violate a criminal statute and also involve violent acts or acts dangerous to human life.  *Linde*, 882 F.3d at 325-26 (stating § 2331(1)(A) provides "that for an act to constitute international terrorism, it must violate federal or state law if committed within this country . . . [it] must *also* involve violence or endanger human life.").  Thus, a defendant's alleged violation of the ATA's criminal material support statutes, such as 18 U.S.C. § 2339A or B (neither is properly alleged in this case, as discussed below), "does not invariably equate to an act of international terrorism" within the meaning of § 2331(1), because violation of those statutes does not necessarily involve "violent acts or acts dangerous to human life."  *Linde*, 882 F.3d at 326.  Here, Plaintiffs allege only that Defendants provided correspondent banking services to ARB.  *See, e.g.*, TAC ¶¶ 32, 38, 95, 108.  There is no allegation that such banking services themselves were violent acts or dangerous to human life.  *See Linde*, 882 F.3d at 327.

> C.  Plaintiffs Fail Plausibly to Plead the Elements of Sections 2339A and 2339B

To plead an ATA claim, a plaintiff must allege that a defendant's conduct constitutes "a violation of the criminal laws of the United States."  *See* 18 U.S.C. § 2331(1)(A); *Linde*, 882 F.3d at 326.  Plaintiffs make only two passing references to any criminal "predicate offense" in the TAC, and do so only in string citations.  *See* TAC ¶¶ 1, 75.  Plaintiffs fail to specify which criminal provision they invoke, and do not plead the elements of either.  This alone requires dismissal.

Even if they had, Plaintiffs' claims must be dismissed for the additional reason that the TAC fails plausibly to allege the mens rea required to state a violation under 18 U.S.C. § 2339A and 2339B. Section 2339A makes it illegal to "provide[] material support or resources . . . *knowing or intending* that they are to be used in preparation for, or in carrying out, a violation of [federal criminal laws including terrorism]." 18 U.S.C. § 2339A(a) (emphasis added). Section 2339A thus requires Plaintiffs plausibly to allege that Defendants knew the banking services they were allegedly providing to ARB would be used to support terrorist activities. Similarly, § 2339B prohibits "knowingly provid[ing]" material support to an FTO.

In *Ofisi*, the court ruled that § 2339A requires plaintiffs to allege sufficient facts to show that (1) BNPP knew Sudan "was acting as an agent of al-Qaeda or of an individual terrorist[] or (2) [BNPP] knew the ultimate beneficiaries of the financial services would be a terrorist organization or terrorist." *Ofisi*, 278 F. Supp. 3d at 100 (alterations in original) (quoting *Owens*, 235 F. Supp. 3d at 98-99). So while the *Ofisi* plaintiffs had alleged that it was "well-known" that Sudan was a state sponsor of terrorism and was harboring terrorists, the court held those allegations insufficient to satisfy Section 2339A's knowledge requirement. It was "insufficient for plaintiffs to allege that it was 'foreseeable' that if BNPP processed transactions for Sudan and Sudanese banks, some of that money might end up in the hands of al-Qaeda to carry out attacks. Plaintiffs' allegations simply do not satisfy the scienter element required  by § 2339A and cannot serve as a predicate act of international terrorism for plaintiffs' ATA claims." *Id.* at 102.

Here, Plaintiffs likewise allege, without any plausible support, that Defendants either knew or were "deliberately indifferent" to "the [alleged] scheme's purposes to facilitate transactions of millions of U.S. dollars for the benefit of prohibited groups, including *al-Qaeda* and *AQI*," (TAC ¶ 68),  knew that "the flow of hundreds of millions of U.S. dollars it was

moving through the United States [at the behest of ARB]" were "for the benefit of *al-Qaeda* and

*AQI*," (TAC ¶ 74), and knew that "Al Rajhi Bank and some of its owners had links to financing

organizations associated with terrorism," TAC ¶ 71. And just as in *Ofisi*, these allegations of

"knowledge" are insufficient to state a violation of § 2339A.

      Plaintiffs' allegations fare no better with respect to § 2339B, involving FTOs. *See*

*Owens*, 235 F. Supp. 3d at 99 ("[i]t is not sufficient to merely allege that it was 'foreseeable'

that if defendants processed transactions for Sudan, Sudan might give some of that money to al

Qaeda. Such allegations do not satisfy the *scienter* element required by § 2339A or § 2339B, and

therefore cannot serve as a predicate act of international terrorism."); *see also Hussein v.*

*Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 176 (S.D.N.Y. 2017) (finding allegations

that defendants were "aware of the *risk* that their network could be used to transfer funds to [an

FTO]' insufficient to establish knowledge under § 2339B) (emphasis added).

      Here, Plaintiffs' generalized and conclusory assertions that "HSBC was fully aware of

the suspicions that ARB and its owners were associated with terrorist financing," but nonetheless

"chose to provide Al Rajhi Bank with banking services and therefore knowingly and

substantially assisted terrorist organization[s]" (TAC ¶ 113) fail plausibly to state a violation of

§ 2339B. Moreover, § 2339B(a)(1) requires the knowing provision of material support or

resources *to* an FTO. Plaintiffs' allegations focus on Defendants' provision of correspondent

banking services *to ARB*, not to AQI. And ARB has itself already been dismissed from the action

because allegations that ARB "provide[d] financial services to clients that *associate with* al-

Qaeda" were too remote even to sustain jurisdiction. ECF 98 at 12 (emphasis added).

III.    **PLAINTIFFS FAIL PLAUSIBLY TO ALLEGE THAT DEFENDANTS ARE SECONDARILY LIABLE UNDER THE ATA**

While it is not clear whether Plaintiffs invoke JASTA—the legislative enactment which created a limited cause of action for secondary liability under the ATA—any such claim necessarily fails.  As noted above, JASTA provides for liability where a defendant "aids and abets, by knowingly providing substantial assistance [to] . . . the person who committed such an act of international terrorism." *Linde*, 882 F.3d at 320 (alteration in original) (quoting § 2333(d)(2)).  But Plaintiffs fail to allege that Defendants provided *any* assistance to "the person who committed such an act of international terrorism," much less the knowing, substantial assistance required under the statute. *See id.*

A.    <u>Plaintiffs Fail Plausibly To Allege that Defendants Provided Any Assistance To the Person Who Committed an Act of International Terrorism</u>

Plaintiffs do not allege that Defendants provided bank services or assistance of any kind to AQI, the terrorist group that allegedly perpetrated the 2005 hotel bombing in Jordan.  Instead, Plaintiffs assert that Defendants "provided correspondent banking and banknotes accounts *to Al Rajhi Bank*." TAC ¶ 38 (emphasis added).[14]  While Plaintiffs attempt to recast allegations of correspondent banking services to ARB as "substantial assistance" to AQI (*see* TAC ¶ 113, "HSBC chose to provide Al Rajhi Bank with banking services and therefore knowingly and substantially assisted terrorist organizations acquire the U.S. dollars required to carry out their acts of terror"), such recitations do not meet the pleading standard set by *Iqbal*.  556 U.S. at 678.  Moreover, Plaintiffs do not—and cannot—plausibly trace any particular banking transactions

---

[14] For the same reason, Plaintiffs could not state a claim for JASTA conspiracy, which requires the plaintiff to plead and prove that the defendant conspired directly with the person or entity that "committed" such a terrorist attack. *See* 18 U.S.C. § 2333(d).

between HSBC US and ARB to any terrorists at all, much less the ones that perpetrated the attack at issue here as required to establish liability.[15]

      B.      <u>Plaintiffs Fail Plausibly To Allege the  Elements of Aiding-and-Abetting and "Substantial Assistance"</u>

Even if Plaintiffs did plausibly allege that Defendants provided assistance to the groups that "committed" the attacks, they fail plausibly to allege either the "*Halberstam* elements of civil aiding and abetting, or the factors relevant to the substantial assistance element," each of which is required under JASTA.  *Linde*, 882 F.3d at 329.  JASTA requires that (i) "the party whom the defendant aids must perform a wrongful act that causes an injury";  (ii) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance"; and (iii) "the defendant must knowingly and substantially assist the principal violation."  *Id.* (quoting *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)).

*First*, the TAC contains no plausible allegations that Defendants were aware that, by providing routine correspondent banking services to ARB, they were "assuming a role in terrorist activities" of AQI.  Plaintiffs simply allege that Defendants knew of ARB's purported "connections to terrorist organizations" (TAC ¶ 39), but this is far from alleging that Defendants knew they were assuming a role in the terrorist activities of AQI (to say nothing of the specific bombing at issue here).

At most, Plaintiffs allege that Defendants provided dollar clearing services to ARB, but there are no allegations that any such services were identified to the Defendants as being for purposes of supporting terrorist activities.  Plaintiffs' allegations do not give rise to any plausible inference that the Defendants were aware of their purported role in AQI's terrorist activities or

---

[15] Plaintiffs allege that ARB "provided banking services directly to *AQI* and Zarqawi." TAC ¶ 39; *see also* TAC ¶ 29.  But Plaintiffs marshal no factual allegations in support of these conclusory assertions; they must be disregarded. Indeed, these allegations were included in Plaintiffs' proposed Second Amended Complaint, which this Court found insufficient to subject ARB to personal jurisdiction in this action. ECF 98 at 11-12.

the  bombing at issue here, or had a desire to commit attack, or provided knowing support for any such attack, or "to make the [terrorist] venture succeed," as is required under *Halberstam*, 705 F.2d at 488, and *Linde*, 882 F.3d at 328-29.  *See also Khulumani v. Barclays Nat'l Bank Ltd.*, 504 F.3d 254, 318 (2d Cir. 2007) ("One who merely sells goods to a buyer is not an aider and abettor of crimes that the buyer might commit, even if the seller knows that the buyer is likely to use the goods unlawfully, because the seller does not share the specific intent to further the buyer's venture.") (citation omitted), *aff'd sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008).[16]

      *Second*, the Plaintiffs fail plausibly to allege that the Defendants "knowingly and substantially assist[ed]" those who perpetrated the bombing at issue here in committing the bombing.  *Linde*, 882 F.3d at 331.  The TAC contains no plausible allegations that the Defendants provided any assistance, much less "substantial assistance," to any terrorists or terrorist organizations that committed any of the attacks.  As the Second Circuit noted in *Linde*, courts should consider:  "(1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance."  *Id.* at 329 (citing *Halberstam*, 705 F.2d at 483-84).

      On this issue, *Ofisi* is illustrative.  There, the court dismissed aiding and abetting claims under *Halberstam* where "plaintiffs failed to plausibly allege that BNPP directly funded any terrorist group, had knowledge of Sudan's use of BNPP-provided funds to sponsor terrorist

---

[16] Moreover, Plaintiffs' vague and conclusory allegations of knowledge, fail to meet the pleading standard set forth under *Twombly* and *Iqbal*.  *See Mastafa v. Australian Wheat Bd. Ltd.*, 2008 WL 4378443, at *5 (S.D.N.Y. Sept. 25, 2008) (dismissing aiding and abetting claims where plaintiffs alleged that defendants "knowingly provided  knowing practical assistance' to the Hussein regime" as "nothing more than a 'formulaic recitation' of the requirement," and further stating that the "knowledge element of aiding and abetting requires that a defendant have 'actual knowledge' that it is assisting in the tortious conduct.").

activities, or knew that BNPP's conduct actually enabled the attacks." 2018 WL 396234, at *5. Likewise, here, there is no well-pleaded allegation, as required under *Halberstam*, that Defendants "encouraged" any act of terrorism, much less the bombing that harmed Plaintiffs. Rather, Plaintiffs allege merely that the Defendants provided correspondent banking services to and somehow "schemed" with ARB, before concluding that "but for" Defendants' banking services, the attacks the Plaintiffs' injuries and deaths would not have occurred. TAC ¶ 9. As in *Ofisi*, such conclusory allegations of "substantial assistance" do not pass muster under *Halberstam*. And as above, the Court's finding that Plaintiffs' allegations against ARB are insufficiently related to their claim to support specific jurisdiction moots any aiding and abetting claim against Defendants, which are even further afield from AQI or the Jordanian bombing.

## CONCLUSION

For these reasons, the Third Amended Complaint fails to state a claim and should be dismissed with prejudice in its entirety.

Respectfully Submitted,

Dated:  April 6, 2017

MAYER BROWN LLP

/s/ *Mark G.  Hanchet*

Mark G.  Hanchet
Robert W.  Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
MHanchet@mayerbrown.com
RHamburg@mayerbrown.com

*Counsel for HSBC North America Holdings Inc.
and HSBC Bank USA N.A.*