UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY SIEGEL, et al.<br><br>    Plaintiffs,<br><br>    v.<br><br>HSBC BANK USA N.A. and HSBC NORTH AMERICA HOLDINGS INC.,<br><br>    Defendants. | Case No.  17-cv-6593 (DLC) |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

MAYER BROWN LLP

Mark G. Hanchet
Robert W. Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500

*Counsel for HSBC North America Holdings
Inc. and HSBC Bank USA N.A.*

May 11, 2018

**PRELIMINARY STATEMENT**

Plaintiffs concede that they cannot state a claim for primary liability under the ATA. They instead argue that Defendants are *secondarily* liable for aiding and abetting al-Qaeda in Iraq ("AQI") in perpetrating the 2005 Jordanian hotel bombing at the crux of this case. But Plaintiffs' Complaint ("TAC") does not so much as reference the ATA's secondary liability provision. And even if it did, Plaintiffs do not plausibly allege any of the elements required to state a claim for aiding and abetting under that provision. Neither Defendant is alleged to have provided services of any kind to AQI, much less to have "knowingly provided substantial assistance" to the individuals who committed the bombing in Jordan. To the contrary, HSBC-US is alleged only to have provided correspondent banking services *to Al Rajhi Bank*—a Saudi commercial bank that has already been dismissed from this action as insufficiently linked to AQI or the Jordanian bombing. Plaintiffs' even more attenuated claim against the remaining Defendants must be dismissed.

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO PLEAD AIDING AND ABETTING UNDER 2333(d)**

   A.    Plaintiffs Fail to Plead a Connection Between Defendants and the Primary Actors

As noted, Plaintiffs expressly disavow any claim based upon primary liability.[1] Opp. 5. And despite failing even to cite the provision in the TAC, Plaintiffs now clarify (Opp. 6) that their claim is based entirely on 18 U.S.C. § 2333(d), which assigns ATA liability to "any person who aids and abets, by knowingly providing substantial assistance [to]…the person who

---

[1] Plaintiffs contend that they "made no attempt to plead primary liability in their Third Amended Complaint." Opp. 5. This statement seems inconsistent with the TAC, which alleges that "Defendants committed acts of international terrorism as defined by 18 U.S.C. §§ 2331, 2339A and 2339B that caused injury to the Plaintiffs in this action, and are civilly liable under 18 U.S.C. § 2333(a) of the Anti-Terrorism Act to Plaintiffs, American citizens who have been injured by reason of the acts of international terrorism by AQI in Amman." TAC ¶ 75. Moreover, as noted, the TAC does not refer to the ATA's secondary liability provision, § 2333(d). The confusion regarding Plaintiffs' fundamental theory of liability underscores Plaintiffs' failure to meet even the notice pleading standard under the Federal Rules of Civil Procedure, not to mention their failure to allege a viable theory of liability.

committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). The plain language of Section 2333(d) requires that the aider and abettor provide knowing and substantial assistance *to the principal actors*—here, four "AQI suicide bombers" (TAC ¶ 4). *See* 18 U.S.C. § 2333(d)(2); *Linde v. Arab Bank, PLC*, 882 F. 3d 314, 329 (2d Cir. 2018) (JASTA aiding and abetting requires that "the party whom the defendant aids must perform a wrongful act that causes an injury") (quoting *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)).

But as explained in Defendants' Opening Brief (Br. 16-17), the TAC does not allege that Defendants provided *any assistance whatsoever* to AQI. Rather, Plaintiffs allege that HSBC-US[2] provided correspondent banking services to Al Rajhi Bank, which Plaintiffs contend is the Saudi private bank that had connections to terrorist financing. *See*, *e.g.*, TAC ¶38. Plaintiffs' failure to allege any direct connection between Defendants and AQI dooms their § 2333(d) claim.

Perhaps recognizing this problem, Plaintiffs argue that "Defendants deliberately engaged in a scheme to falsify financial transaction information in order to continue doing business with Al Rajhi Bank and other institutions that had connections to terrorist financing." Opp. 8. As discussed in the Opening Brief, Plaintiffs provide no factual support for this conclusory allegation (Br. 4 at n.2), which does not even make sense in the context of correspondent banking.[3] More importantly, this very allegation was already rejected in this action, as insufficient even to subject Al Rajhi Bank to personal jurisdiction:

> The only allegation in the Amended Complaint regarding U.S.-directed conduct by Al Rajhi Bank concerns a 'scheme' between the 'HSBC Defendants' and Al Rajhi Bank to make it 'possible'

---

[2] HSBC North America is a bank holding company and is not alleged to have provided banking services to anyone.
[3] Plaintiffs misleadingly cobble together distinct sections of the 2012 Senate Report (*see* Opp. at 2-3, block-quoting paragraphs from different sections of the 334-page Report without delineation) to support their contention that "[t]he HSBC Defendants…agreed to strip identifying information from transactions involving Al Rajhi Bank and other prohibited financial institutions prior to the Jordanian bombing." Opp. 3. The Senate Report says nothing about transactions with Al Rajhi Bank being subjected to stripping. As explained in the Opening Brief (Br. 4 at n.2), stripping involves the removal of information from transaction documentation *before* it reaches the U.S correspondent bank (here, HSBC-US).

> for Al Rajhi Bank to transfer U.S. dollars through the United States in a way that 'circumvent[ed] monitoring by U.S. regulators.' Without more, this allegation, taken as true for the purposes of the present motions, is simply insufficient to justify the exercise of specific personal jurisdiction in this case, which concerns harms occasioned by the November 2005 attack.

Memorandum Opinion and Order, ECF 79 at 10.[4] Plaintiffs' so-called "scheme," which was insufficiently related to their claims to subject Al Rajhi Bank to *specific jurisdiction*, cannot form the basis of *liability* against the Defendants, who are even further removed from AQI or the Jordanian bombing.

      B.      <u>Plaintiffs Cannot Allege that Defendants Were Aware of Their Role in Terrorist Activities</u>

Plaintiffs' argument regarding Defendants' "awareness" of their role in AQI's violent or life-endangering activities is even less plausible. As *Linde* held, "[a]iding and abetting requires the secondary actor to be aware that, by assisting the principal, it is itself assuming a role in terrorist activities." 882 F.3d at 329 (internal quotations omitted). Plaintiffs dedicate pages of their Opposition reciting nonparty Al Rajhi Bank's alleged connection to terrorist financing, before concluding that, by continuing to do business with the Saudi bank Al Rajhi, Defendants "were aware of their role as they provided, and continued to provide, terrorist organizations like AQI with U.S. dollars." Opp. 10-12.

However, Defendants' alleged knowledge of Al Rajhi Bank's connections to terror financing cannot form the basis for Defendants' "awareness" of their supposed role in the relevant terrorist activities at issue here. While Plaintiffs make generalized allegations regarding Al Rajhi Bank's ties to "international terrorism" writ large (Opp. 10-12), those allegations are not specific to AQI and do not bear any rational connection to the 2005 bombing that forms the

---

[4] *Accord* Opinion and Order, ECF No. 98 at 12 ("The SAC alleges that Al Rajhi Bank aided terrorists by giving them an entry into the American financial system in a way which circumvented usual regulations, but does not sufficiently assert how this banking relationship relates to the November 9, 2005 attacks in Amman.").

3

basis of their claim. In recognition of this, the Court has already held that Plaintiffs "have failed to connect Al Rajhi Bank to the November 9, 2005 attacks." ECF No. 98 at 12. Defendants cannot be found to have "awareness" of a connection that Plaintiffs have not and cannot plausibly allege.[5]

      C.    <u>Plaintiffs Cannot Allege that Defendants Provided Knowing, Substantial Assistance to AQI</u>

In arguing the "knowing, substantial assistance" prong of their aiding and abetting claim, Plaintiffs rehash generalized allegations that Defendants engaged in "stripping" and OFAC sanctions circumvention. Opp. 14. Plaintiffs fail to explain how these allegations relate to the 2005 bombing at issue in this case, and they have already been considered and deemed legally insufficient by this Court. ECF 98 at 12. These conclusory and untethered allegations must be disregarded in accordance with the pleading standard set forth in *Twombly* and *Iqbal*.

Even if the Court were to lend credence to these allegations, Plaintiffs fail to explain how the provision of correspondent banking services *to Al Rajhi Bank* constitutes knowing, substantial assistance *to AQI*. Courts have rejected such indirect theories of "knowing, substantial assistance." *See Ofisi v. BNP Paribas S.A.*, 2018 WL 396234, at *5 (D.D.C. Jan. 11, 2018) (dismissing common law aiding and abetting claims under *Halberstam* where "plaintiffs failed to plausibly allege that BNPP directly funded any terrorist group, had knowledge of

---

[5] A recent decision issued just weeks ago in this district is instructive. In *O'Sullivan, et al. v. Deutsche Bank AG, et al.*, the court stayed all discovery in an ATA action against several bank defendants, including HSBC-US. 2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018) (objection pending). There, the defendants were alleged to have provided banking services to Iran and its proxies, which, in turn, were alleged to have supported terror groups in Iraq that perpetrated violent attacks on the plaintiffs. The court concluded that, while the plaintiffs had alleged that the defendants knew they were circumventing sanctions by providing bank services to Iran and knew the sanctions were imposed with the sole purpose of stopping Iran's sponsorship of terrorism, there was no plausible allegation that the defendants "knew that the financial services they provided to Iran would in turn be given to terrorist organizations to carry out violent or life-endangering activities." *Id*. at *6 *citing Rothstein v. UBS AG*, 708 F.3d. 82, 97 (2d Cir. 2013). The *O'Sullivan* court thus held that the bank defendants had "made a strong showing that plaintiffs' aiding and abetting claims asserted under 18 U.S.C. § 2333(d) are not meritorious." *Id*. at *6. The *O'Sullivan* reasoning applies with even greater force here, where the recipient of the banking services, Al Rajhi Bank (unlike Iran in *O'Sullivan*), has been dismissed from the action based on Plaintiffs' failure to establish any meaningful connection to the attack at issue.

Sudan's use of BNPP-provided funds to sponsor terrorist activities, or knew that BNPP's conduct actually enabled the attacks.") Dismissal is particularly warranted here where Al Rajhi Bank, the entity through which Defendants allegedly provided "knowing substantial assistance" to the perpetrators of the 2005 bombing, has itself been dismissed from the action as insufficiently tied to that bombing.

## CONCLUSION

For these reasons, and those set forth in Defendants' Opening Brief, the Third Amended Complaint fails to state a claim and should be dismissed with prejudice in its entirety.

Respectfully Submitted,

Dated:  May 11, 2018

MAYER BROWN LLP

/s/   Mark G. Hanchet

Mark G. Hanchet
Robert W. Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
MHanchet@mayerbrown.com
RHamburg@mayerbrown.com

*Counsel for HSBC North America Holdings Inc. and HSBC Bank USA N.A.*