```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
JEFFREY SIEGEL, Administrator of the     :
Estate of MOUSTAPHA AKKAD, deceased,     :
and MOUSTAPHA AKKAD'S heirs; SOOHA       :
AKKAD, individually; SUSAN GITELSON,     :     17cv6593(DLC)
Special Administrator of the Estate of   :
RIMA AKKAD MONLA, deceased, and RIMA     :     OPINION AND ORDER
AKKAD MONLA's heirs, ZIAD MONLA,         :
individually, and on behalf of his       :
minors sons; and MICHAEL BUTLER,         :
                                         :
                         Plaintiffs,     :
              -v-                        :
                                         :
HSBC BANK USA, N.A. and HSBC NORTH       :
AMERICA HOLDINGS, INC.,                  :
                                         :
                         Defendants.     :
                                         :
---------------------------------------- X
```

APPEARANCES:

For Plaintiffs:
William T. Gibbs
Corboy & Demetrio, P.C.
33 North Dearborn St., 21st Fl.
Chicago, Illinois 60602

For Defendants:
Mark G. Hanchet
Robert W. Hamburg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020

DENISE COTE, District Judge:

Plaintiffs, victims or family members of victims of a terrorist bombing in Amman, Jordan in 2005, bring claims under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"), as amended by

the Justice Against Sponsors of Terrorism Act, Publ. L. No. 114-222 130 Stat. 852 (2016) ("JASTA").  Plaintiffs claim that defendants, two United States financial institutions, through services they provided to Al Rajhi Bank ("ARB"), a Saudi Arabian bank, supported the terrorist organizations al-Qaeda and al-Qaeda in Iraq ("AQI") that perpetrated the attack.  Defendants have moved to dismiss the plaintiffs' complaint for failure to state a claim.  For the reasons that follow, the defendants' motion is granted.

BACKGROUND

The following facts are drawn from the Third Amended Complaint ("TAC").  The facts are construed in favor of the plaintiffs.

This action arises out of terrorist suicide bombings perpetrated by al-Qaeda and AQI on November 9, 2005 at three hotels in Amman, Jordan ("November 9 Attack").  The plaintiffs are Americans who survived the attacks or descendants of American victims who died in the attacks, as well as the administrators of the estates of the victims who died.  The plaintiffs bring claims against HSBC Bank USA, N.A. ("HBUS") and HSBC North America Holdings, Inc. ("HSBC-NA").

HBSC-NA is a financial institution holding company.  It is the parent company of HBUS.  HSBC-NA does not provide banking

2

services, but its directors oversee the anti-money laundering activities of HBUS. HBUS is a banking services institution. Both defendants have their principal place of business in New York.

The TAC alleges that the defendants failed to take reasonable steps to ensure that HBUS was not dealing with banks that may have links to or that facilitate terrorist financing. HBUS opened U.S. correspondent accounts for high risk affiliates without conducting due diligence, thereby facilitating transactions that hindered U.S. efforts to stop terrorists. HBUS also altered, falsified or omitted information from payment messages that involved "prohibited" countries and institutions for the express purpose of concealing financial activities and transactions from detection or monitoring by the United States authorities.[1]

Before the November 9 Attack, the defendants knew that ARB was associated with terrorist financing and that ARB provided accounts to clients linked with terrorism. Despite this

---

[1] While the TAC asserts that the defendants "agreed to strip" information from transactions involving ARB and others, the defendants point out that any stripping of information is done by third parties before transaction documents are sent to HBUS. Moreover, while the TAC includes substantial quotations and descriptions of government findings, none of those sources are cited as providing a basis to allege that ARB and the defendants had entered into an agreement about stripping or that any of the defendants' transactions with ARB were subject to stripping.

3

knowledge, HBUS provided ARB with correspondent banking and banknotes accounts.

ARB is the largest private financial institution in the Kingdom of Saudi Arabia. It holds over $80 billion in assets. ARB has been linked to terrorist organizations by United States government authorities, including the United States Treasury and the Central Intelligence Agency.

The TAC alleges that members of AQI used banking and financial services provided by ARB and that those services helped facilitate the November 9 Attack, along with other terrorist attacks. The TAC alleges that purchases and expenses directly related to the November 9 Attack, including travel and visa costs, were underwritten by funds that moved through ARB.

The TAC asserts that, without the defendants, AQI and al-Queda would not have had the access to the U.S. financial system that they needed to carry out the November 9 Attack. By continuing to do business with ARB even when they knew of its connections to terrorist organizations, the defendants "allowed AQI . . . the access to the U.S. financial system they needed to carry out their acts of terror, including the November 5, 2009 bombing in Amman." Over the course of their lengthy relationship, HSBC "provided" nearly $1 billion to ARB. It was

4

not until October 2010 that HBUS closed its banknotes account with ARB.[2]

The TAC alleges that, in providing services to ARB, HBUS deviated from international and domestic standards which encourage banks to monitor, report, and stop activity associated with terrorist, criminal, or money laundering activity. Such standards include the 1998 Basel Committee standards and guidelines, the Bank Secrecy Act, and standards set by the United States Treasury Department. The United States Senate Permanent Subcommittee on Investigations' 2010 Report, "U.S. Vulnerabilities to Money Laundering, Drugs, and Terrorist Financing" (the "Report"), which was the result of an investigation into HSBC's vulnerabilities to criminal activity, highlighted HBUS's lack of "safeguards" to protect against abuse from terrorist organizations. The TAC incorporates the Report. The Report specifically mentioned HSBC's relationship with ARB. It stated that

> HSBC has been active in Saudi Arabia, conducting substantial banking activities through affiliates as well as doing business with Saudi Arabia's largest private financial institution, al Rajhi Bank. After the 9/11

---

[2] As noted in an earlier Opinion dismissing claims against ARB for want of personal jurisdiction, HBUS temporarily halted business with ARB from January 2005 to late 2006. See Siegel v. HSBC Holdings, PLC, 17cv6593 (DLC), 2018 WL 501610, at *4 (S.D.N.Y. Jan. 19, 2018). HBUS was not doing business with ARB at the time of the November 9 Attack. The TAC, like its predecessors, incorporates a U.S. Senate Report which details the timeline of HBUS' relationship with ARB.

5

terrorist attack in 2001, evidence began to emerge that Al
Rajhi Bank and some of its owners had links to financing
organizations associated with terrorism, including evidence
that the bank's key founder was an early financial
benefactor of al Qaeda.

PROCEDURAL HISTORY

This action was initially brought in the Northern District of Illinois.  Five defendants were named: HSBC-NA, HBUS, HSBC Holdings, PLC, HSBC Middle East Bank Limited, and ARB.  On January 19, 2018, after the action was transferred to this Court, claims against HSBC Holdings and ARB were dismissed with prejudice for lack of personal jurisdiction.  <u>Siegel v. HSBC Holdings, PLC</u>, 17cv6593 (DLC), 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018).  Plaintiffs voluntarily dismissed any claims asserted against HSBC Middle East Bank Limited.

On March 16, plaintiffs filed the TAC.  It brings a single claim against HSBC-NA and HBUS for a violation of the ATA by aiding and abetting its violation, including by knowingly and substantially assisting terrorist organizations by continuing to do business with entities it knew had links to terrorist financing.  It asserts that HSBC's breaches of duties to act with the highest ethical standards, to cooperate with law enforcement, and to conduct due diligence proximately caused the deaths and injuries inflicted on the victims of the November 9 Attack.  Defendants moved to dismiss the TAC for failure to

state a claim on April 6.  The motion became fully submitted on
May 11.

## DISCUSSION

When a party moves to dismiss for failure to state a
claim upon which relief can be granted under Fed. R. Civ. P.
12(b)(6), a court must "accept all allegations in the complaint
as true and draw all inferences in the non-moving party's
favor."  LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471,
475 (2d Cir. 2009) (citation omitted).  The complaint will
survive the motion to dismiss as long as it contains "sufficient
factual matter, accepted as true, to state a claim to relief
that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (citation omitted).  "[T]he court will deem the
complaint to include any written instrument attached to it as an
exhibit, materials incorporated in it by reference, and
documents that, although not incorporated by reference, are
integral to the complaint."  L-7 Designs, Inc. v. Old Navy, LLC,
647 F.3d 418, 422 (2d Cir. 2011) (citation omitted).

The ATA provides that "[a]ny national of the United States
injured in his or her person, property, or business by reason of
an act of international terrorism, or his or her estate,
survivors, or heirs, may sue therefor in any appropriate
district court of the United States."  15 U.S.C. § 2333(a).  See

Linde v. Arab Bank, PLC, 882 F.3d 314, 331 (2d Cir 2018).

"International terrorism" is defined as acts that

> (1) involve violence or endanger human life; (2) violate federal or state criminal law if committed in the United States; (3) appear intended to intimidate or coerce civilian population, influence government policy, or affect government conduct by specified means; and (4) occur primarily outside the United States or transcend national boundaries.

18 U.S.C. § 2331(1).

The ATA requires a showing that the defendant's acts proximately caused the plaintiff's injuries. In re Terrorist Attacks on September 11, 2011, 714 F.3d 118, 124 (2d Cir. 2013). The Second Circuit has noted that the following elements are considered when determining if a plaintiff bringing claims against a bank under the ATA has sufficiently pled proximate cause: (1) If the Complaint "allege[s] that [the bank] was a participant in the terrorist attacks that injured the plaintiffs"; (2) If the Complaint "allege[s] that [the bank] provided money to" the terrorist organizations; (3) If the Complaint alleges that "U.S. currency [the bank] transferred to [another country or bank] was given to [the terrorist organization]"; If the Complaint "allege[s] that if [the bank] had not transferred U.S. currency" the attack would not have been otherwise funded. Rothstein v. UBS AG, 708 F.3d 82, 97 (2d Cir. 2013). See also In re Terrorist Attacks, 714 F.3d at 124 (finding insufficient pleading of proximate cause "for the same

8

reasons the allegations in Rothstein fell short"). The provision of material support to a designated terrorist organization does not, by itself, violate the ATA. Banks may be found primarily responsible for an act of international terrorism, but "providing routine financial series to members and associates of terrorist organization" does not necessarily satisfy the ATA's requirements for an act of terrorism. Linde, 882 F.3d at 327.

In 2016, Congress amended the ATA by enacting JASTA. "After JASTA, plaintiffs are not limited to proving their ATA claim on a theory of . . . primary liability." Id. at 331. The JASTA amends 18 U.S.C. § 2333 by providing a cause of action "as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed . . . an act of international terrorism." 18 U.S.C. § 2333(d). The Second Circuit has noted that "[a]iding and abetting requires the secondary actor to be aware that, by assisting the principal, it is itself assuming a role in terrorist activities." Linde, 882 at 329 (citation omitted). If the defendant is a financial institution, this requires a showing that "in providing [financial] services, the bank was generally aware that it was thereby playing a role in [the terrorist organization's] violent or life-endangering activities," which "requires more than the provision of material

9

support to a designated terrorist organization." Id. (citation omitted).

Aiding and abetting, in the ATA context, requires proof of three elements:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury, (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and (3) the defendant must knowingly and substantially assist the principal violation.

Id. at 329 (citation omitted). Six factors are relevant to the determination of the third aiding and abetting factor:

> (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance.

Id. Under an aiding and abetting theory, to establish ATA liability "plaintiffs [do] not have to prove that [a] bank's own acts constitute international terrorism satisfying all the definitional requirements of § 2331(1)." Id. at 328.

In opposition to the instant motion, plaintiffs abandon any theory of primary liability under ATA. They advance only a claim of aiding and abetting liability.

The TAC does not plausibly allege that either defendant aided and abetted a violation of the ATA. It does not allege any direct relationship with the terrorist organizations that were responsible for the November 9 Attack. It describes

instead HSBC's direct relationship with another financial institution, ARB. It is ARB that is alleged to have provided banking services to the terrorist organizations. It accuses the defendants of adopting slipshod banking practices, and operating with inadequate anti-money laundering controls, but it does not adequately allege that the defendants were aiding the terrorist organizations that performed the November 9 Attack. For instance, it does not adequately allege that the defendants were even generally aware that the financial services they provided ARB were directly assisting those terrorist organizations, or even that the financial services they provided ARB substantially assisted the terrorist organizations in carrying out the November 9 Attack. The TAC does not adequately allege that the defendants assumed a role in terrorist activities.

At most, the TAC alleges that the defendants knew they were circumventing and violating banking regulations by providing ARB with correspondent banking services, and that the defendants were aware of ARB's own connections generally with terrorist organizations. It accuses the defendants of continuing to provide banking services to ARB despite knowledge of the risk that ARB itself would use the U.S. dollars generated through those banking services to in turn provide banking services or even funding to terrorists. Accepting these statements as true, however, the TAC does not demonstrate that defendants knew that

the financial services they provided to ARB would in turn be given to AQI and al-Qaeda to carry out terrorist attacks, including the November 9 Attack. Perhaps most damning, the TAC, by incorporating the Report, acknowledges that HBUS was not associated with ARB at the date of the November 9 Attack, and for ten months leading up to the attack.

Because money is fungible and because the international banking system depends on cooperation among financial institutions across borders, it is particularly important to focus with care in cases like this on each of the necessary elements to a finding that JATSA has been violated. Those elements present a substantial hurdle when one financial institution is accused of having violated the ATA by providing assistance to terrorist organizations through engaging in common commercial banking practices with a foreign financial institution. This observation is not meant to detract from the importance of enforcing ATA and JATSA through civil lawsuits, or to minimize the horror that terrorism brings across the globe, including to these shores.

Even if the TAC alleged that services the defendants provided to ARB directly supported AQI and al-Qaeda, which it does not, that would be insufficient. The TAC does not allege that the defendants were generally aware that they were playing a role in the November 9 Attack. As the Second Circuit has

12

noted, "aiding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization." Linde, 882 F.3d at 329 (emphasis in original).

Plaintiffs have failed to cite to any allegations in their complaint that show in a plausible, non-conclusory fashion that the defendants knowingly aided or abetted any terrorist organization's violent or life-endangering activities. Their claims must be dismissed.

## CONCLUSION

The defendant's April 6 motion to dismiss the Third Amended Complaint is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         July 27, 2018

                    _____
                         DENISE COTE
                    United States District Judge